**Leroy R. EDWARDS, Plaintiff,**

v.

**NILES SALES & SERVICE, INC., a Florida corporation for profit, and Jack Niles, individually Defendants.**

**No. 05–10027–CIV.**

United States District Court, S.D. Florida.

June 27, 2006.

---

William O. Solms, Esq., Demahy Labrador Drake & Payne, PA, Coral Gables, FL, for Plaintiff.

Dale L. Friedman, Esq., Conroy Simberg Ganon Krevans, Abel Lurvey Morrow & Scheffer, P.A., Hollywood, FL, of Each Defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment (DE # 42).

THIS MATTER was referred to the Honorable Barry L. Garber, United States Magistrate Judge (DE # 31). Magistrate Judge Garber issued a Report and Recom-

mendation dated May 25, 2006 (DE # 50). Plaintiff objected to Magistrate Judge Garber's Report and Recommendation (DE # 53), and Defendants responded to Plaintiff's objections (DE # 56). After a *de novo* review of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that Magistrate Judge Garber's careful and well-reasoned Report and Recommendation (DE # 6) is ADOPTED in its entirety as the opinion of this Court and incorporated herein. It is therefore

ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (DE # 42) is GRANTED. It is further

ORDERED AND ADJUDGED that Defendants' request for sanctions due to Plaintiff's failure to properly paginate the pages of his objections is DENIED. It is further

ORDERED AND ADJUDGED that all pending motions are DENIED AS MOOT. The Clerk of Court is directed to CLOSE this case.

## REPORT AND RECOMMENDATION

GARBER, United States Magistrate Judge.

THIS CAUSE is before the Court on Defendants' Motion for Summary Judgment (D.E.# 42), pursuant to an Order of Reference entered by the Honorable K. Michael Moore, United States District Judge. For the reasons set forth below, it is respectfully recommended that the Court GRANT Defendants' Motion for Summary Judgment.

## BACKGROUND

Plaintiff, a black male, formerly worked as an automobile and truck mechanic at Defendant Niles Sales & Service, Inc., a

General Motors/Nissan dealership which is located in Key West, Florida. Defendant Jack Niles is the secretary of Niles Sales & Service, Inc., *see* Niles Aff. ¶ 2, and also allegedly owns that company, *see* Compl. ¶ 1.

On October 15, 2001, Plaintiff began to work for non-party Morrison Sales & Service ("Morrison"). *See, e.g.,* Edwards Dep., at 32, 38–39, 51. Morrison paid Plaintiff $21.00 per hour when it hired him, but soon increased his pay rate to $22.00 per hour. *See* Edwards Dep., at 51, 104–05. Plaintiff worked for Morrison until June 28, 2002, when Defendant Niles Sales & Service, Inc., bought the dealership from Morrison. *See, e.g.,* Compl. ¶ 7; Niles Aff. ¶ 3; Edwards Dep., at 106. During Plaintiff's entire tenure with Defendants, Defendants paid him $22.00 per hour.

On September 15, 2004, Plaintiff was involved in a work-related accident in Defendants' service garage. *See* Edwards Dep., at 137; Niles Aff. ¶ 13. Plaintiff injured his shoulder a result of that accident.[1] *See* Plaintiff's Response (D.E.# 48), at 3–4; Niles Aff. ¶ 13; Edwards May 5, 2006, Aff. ¶ 12; Edwards Apr. 25, 2006, Aff. ¶¶ 19–20. The following

day, September 16, 2004, Plaintiff returned to work for part of the day. *See* Edwards Dep., at 7–8, 157–58. Because of the injury, however, Plaintiff did not return to work from September 17, 2004, until December 18, 2004. *See id.* at 7–8, 158.

Plaintiff applied for and received workers' compensation benefits, including payments for medical treatment and a percentage of his salary, as a result of that work-related accident and injury. *See* Niles Aff. ¶ 13; Edwards Dep., at 220. He continued to receive workers' compensation benefits until approximately January 18, 2006, when he agreed to a lump-sum settlement of his workers' compensation claim. *See* Defendants' Statement of Material Facts (D.E.# 43) at 8 ¶ 22; Edwards Apr. 25, 2006, Aff. ¶ 22; *cf.* Edwards Dep., at 9–11 (discussing fact that as of December 21, 2005, Plaintiff still was receiving workers' compensation benefits but had not obtained approval for a third surgery on his shoulder).

On December 18, 2004, after Plaintiff had been out of work for approximately three months because of his shoulder injury, Defendants terminated Plaintiff's employment.[2] *See* Edwards Dep., at 8, 127–

---

1. Late in Plaintiff's deposition, Plaintiff testified that he injured *both* shoulders in the accident. *See* Edwards Dep., at 229, 232–33. There is no evidence that Plaintiff claimed an inability to work, or sought workers' compensation benefits, as a result of any injury to the *second* shoulder. The question of whether or to what extent he injured that second shoulder, however, is irrelevant to consideration of this Motion for Summary Judgment.

2. In Plaintiff's Response to Defendants' Motion for Summary Judgment, he argues that although he learned of his termination on December 18, 2004, the effective date of his termination was December 10, 2004. *See* Plaintiff's Response (D.E.# 48). Plaintiff, however, has not directed the Court to any *evidence* supporting that assertion, and in fact the uncontroverted evidence—most notably

Plaintiff's own testimony in both his deposition and in the affidavits which he submitted as attachments to support his Response to Defendants' Motion for Summary Judgment—demonstrates that Plaintiff was fired on December 18, 2004, not on December 10, 2004. *See* Edwards Dep., at 8 ("The last day I was employed was December 18, 2004."); *id.* at 127–29; Edwards May 5, 2006, Aff. ¶ 14 ("I was terminated on or about December 18, 2005."); Edwards Apr. 25, 2006, Aff. ¶ 20 ("As of December 18, the date of my termination"); *see also* Compl. ¶ 7 ("From October 15, 2001 through December 18, 2004, Plaintiff was employed by Defendants."); Plaintiff's December 20, 2004, EEOC charge (Exh. 16 to Plaintiffs' Deposition) (Listing December 18, 2004, as "date(s) discrimination took place" and stating, "On or about Decem-

30; Niles Aff. ¶ 17. When Defendant Jack Niles fired Plaintiff, he informed Plaintiff that "he needed to fill the position." [3] Edwards Dep., at 129; *see also, e.g., id.* at 187–88, 219–20. As of December 21, 2005, the date of Plaintiff's deposition and more than one year after Plaintiff had been fired, Plaintiff still would have been unable to return to his position with Defendants because his doctors had not released him to return to work as a result of his shoulder injury. *See* Edwards Dep., at 8–9, 12, 245–46.

Plaintiff filed three EEOC charges of discrimination against Defendants. Plaintiff filed the first charge on June 29, 2004, before his accident and before Defendants fired him. In that charge, Plaintiff alleged discriminatory treatment because Defendant had hired a white mechanic, Keith Estep, who was less-qualified and had less experience than Plaintiff, at a higher pay rate than Plaintiff received. *See* Edwards Dep., Exh. 15; *see also, e.g.,* Edwards Dep., at 168–69 (discussing first EEOC charge). Plaintiff filed the second charge on October 1, 2004, after his injury but before Defendants fired him. In that charge, Plaintiff alleged that Defendants had retaliated against him by issuing him a

---

ber 18, 2004, my employment was terminated.")

Although one of counsel's questions at Plaintiff's deposition suggested that one document lists Plaintiff's separation date as December 10, 2004, not December 18, 2004 (Plaintiff has not supplied the Court with a copy of that document and has not directed the Court to its location anywhere in the record), a lawyer's question does not constitute evidence which may be used to defeat summary judgment. *See, e.g., Cargill v. Turpin,* 120 F.3d 1366, 1385 (11th Cir.1997) (Holding that prosecutor's improper comments did not render criminal sentencing proceeding fundamentally unfair because, *inter alia,* "the [state trial] court clearly instructed the jury that lawyers' comments did not comprise evidence."); *United States v. Brown,* 546 F.2d 166, 174 (5th Cir.1977); *Broadway v. City of Montgomery, Ala.,* 530 F.2d 657, 661 (5th Cir.1976) ("Evidence inadmissible at trial cannot be used to avoid summary judgment."); *Lopez v. Ingram Micro, Inc.,* No. 95–2004–Civ–Nesbitt, 1997 WL 401585, at *7 (S.D.Fla. Mar.18, 1997) (J. Nesbitt) (holding that a plaintiff may not rely on evidence which would be inadmissible at trial to defeat summary judgment).

More importantly, when Plaintiff was asked about the December 10 date on that document, he affirmatively testified that that date was inaccurate and that he was fired on December 18, not December 10, *see* Edwards Dep., at 128 (Q: "Is that an inaccurate date?" A: "Yes, it is."), and he repeated that December 18, 2004, date in his two recent affidavits, despite his awareness that he had been asked about that potential discrepancy in his deposition and despite the fact that he is now trying to make an issue out of that potential discrepancy, *see* Edwards May 5, 2006, Aff. ¶ 14; Edwards Apr. 25, 2006, Aff. ¶ 20.

Finally, even if the Court accepted as true Plaintiff's unsupported assertion that Defendants fired him on December 18, 2004, but attempted to make December 10, 2004, the effective date of his termination, that would not change the fact that he actually was fired on December 18, 2004.

**3.** At other times in Plaintiff's deposition and in his December 20, 2004, EEOC charge, Plaintiff testified that Defendants did not give Plaintiff any reason for his termination. *See, e.g.,* Edwards Dep., at 188, 219–20, Exh. 16. On different occasions when Defendants confronted Plaintiff with the discrepancy between that statement and Plaintiff's statement that Jack Niles explicitly told Plaintiff that he was terminating Plaintiff because "he needed to fill the position," Plaintiff offered different explanations for the discrepancy. For example, at one point in his deposition he stated that Jack Niles's reason was unimportant because it was not in writing, *see id.* at 187–89, and at another point in his deposition he stated that he did not believe that reason, *see id.* at 219–20. Although the Court will not consider Plaintiff's credibility in its consideration of Defendants' Motion for Summary Judgment, Plaintiff's inconsistent and evasive answers certainly would call into question his credibility and/or motivations if this case proceeded to trial.

written warning for failing to report an on-the-job injury. *See* Edwards Dep., Exh. 14; *see also, e.g.,* Edwards Dep., at 180 (discussing second EEOC charge). Plaintiff filed the third charge on January 3, 2005, after his injury and after Defendants fired him. In that charge, Plaintiff alleged that Defendants fired him in retaliation for filing the first two EEOC discrimination charges. *See* Edwards Dep., Exh. 16; *see also, e.g.,* Edwards Dep., at 184–86 (discussing third EEOC charge); *see generally* Defendants' Motion for Summary Judgment (D.E.# 42), at 9 n. 1; Compl. ¶¶ 13, 15. Plaintiff received three right-to-sue letters from the EEOC. *See* Compl. ¶ 16 & Exhs. A–C.

On March 30, 2005, Plaintiff commenced this action. Plaintiff asserted three claims against Defendants. In Count I, Plaintiff alleges that Defendants violated the Fair Labor Standards Act (FLSA) by failing to pay him overtime wages. *See* Compl. ¶¶ 11, 19. In Count II, Plaintiff alleges that Defendants discriminated against him because of his race, in violation of both Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. *See id.* at 6 & ¶ 26. In Count III, Plaintiff alleges that Defendants fired him in retaliation for filing a workers' compensation claim, in violation of Florida Statute § 440.205. *See id.* ¶ 29.

## DISCUSSION

Defendants move for summary judgment as to all three of Plaintiff's claims.

### Summary judgment standard

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Maniccia v. Brown,* 171 F.3d 1364, 1367 (11th Cir.1999); *Campbell v. Sikes,* 169 F.3d 1353, 1361 (11th Cir.1999). The movant bears the initial responsibility of informing the Court of the basis for its motion and of identifying those materials which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In response to a properly supported motion for summary judgment, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts which show a genuine issue for trial." Fed.R.Civ.P. 56(e). If the non-moving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the Court must enter summary judgment for the moving party. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552. The Court, however, must view the evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Maniccia,* 171 F.3d at 1367.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis added). The Court is not to resolve factual issues, but may only determine whether factual issues exist. A material fact is one which "might affect the outcome of the suit under the governing law...." *Id.* at 248, 106 S.Ct. at 2510. The Court's inquiry therefore is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

## Count I

In Count I, Plaintiff alleges that Defendants failed to pay him overtime wages,[4] in violation of the Fair Labor Standards Act ("FLSA"). Defendants move for summary judgment as to Count I on the ground that Plaintiff is subject to an exemption for FLSA overtime wages for certain mechanics "primarily engaged in selling or servicing automobiles, trucks, or farm implements . . . ." 29 U.S.C. § 213(b)(10)(A). In Response, Plaintiff abandons his overtime claim,[5] and therefore it is recommended that the Court grant summary judgment in Defendants' favor as to that claim.

■ Although Plaintiff has abandoned his overtime claim, in his Response to Defendants' Motion for Summary Judgment, he seeks—for the first time—leave to amend the Complaint to state a claim ei-

ther for non-payment of minimum wages under FLSA, for non-payment of wages under Florida law,[6] or for breach of contract related to the alleged non-payment of wages. *See* D.E. # 48, at 5. Defendants object to the proposed amendment on the grounds that Plaintiff may not supplement his Complaint through argument in a brief opposing summary judgment and Plaintiff has not complied with Federal Rule of Civil Procedure 15(a) in seeking the amendment. *See* Defendants' Reply (D.E.# 49), at 4. The undersigned agrees with Defendants and therefore recommends that the Court deny Plaintiff's request to amend the Complaint.

Plaintiff "may not amend [his] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, Mc-*

4. Incredibly, Plaintiff sought from Defendants overtime wages which have accrued since April 21, 2000, despite the fact that he did not even work for Morrison until almost one and one-half years after that date (*i.e.*, October 15, 2001), and did not work for Defendants until more than two years after that date (*i.e.*, June 28, 2002). *See* Plaintiff's Supplemental Answers to Defendants' Initial Interrogatories (Exh. 11 to Edwards Dep.), Answer to Interrogatory 3; Edwards Dep., at 197–98. Perhaps more incredibly, when Defendants' counsel pointed out that discrepancy to Plaintiff, Plaintiff continued to argue that he was entitled to overtime pay beginning on April 21, 2000. *See* Edwards Dep., at 197–99. Plaintiff's unconvincing explanation as to why he would be entitled to overtime for that period before he even began to work for Morrison or Defendants was: "Because they hired us to work overtime." *Id.* at 197.

5. Although Plaintiff abandoned his overtime claim, he implied that he *might* have a legitimate basis to argue that the relevant exemption does not apply to him. *See* Plaintiff's Response (D.E.# 48), at 5 ("While this exemption can be denied where 20% or more of the Plaintiff's work was for non-exempt tasks, Plaintiff elects not to pursue this avenue."). Plaintiff did not, however, direct the Court to

any evidence which suggests that he had a non-frivolous basis to support that argument, and he explicitly recognized that the exemption may apply to him. *See id.* at 1 ("Defendant may have an exemption from paying Plaintiff his overtime").

6. Plaintiff cites Florida Statute § 448.08 as the basis for that proposed Florida law claim. Section 448.08 does not, however, create or otherwise provide for a cause of action for back wages, but instead relates only to payment of attorneys' fees to a prevailing party in an action for back wages brought pursuant to some other law. *See, e.g.,* Fla. Stat. § 448.08 ("The court may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee."); *Ocean Club Community Ass'n, Inc. v. Curtis,* 935 So.2d 513, 515, 2006 WL 861180, at *1 (Fla. 3d DCA Apr.5, 2006). It appears that the appropriate basis for Plaintiff's proposed claim would be Florida common law. *See, e.g.,* McRae v. Douglas, 644 So.2d 1368, 1371 n. 1 (Fla. 5th DCA 1994) ("McRae concedes that Count I was a common law action for recovery of unpaid wages"). The Court construes Plaintiff's request as one to bring such a claim pursuant to Florida common law or, in the alternative, whatever statute other than § 448.08 actually does create such a cause of action.

*Donald & Co.*, 382 F.3d 1312, 1315 (11th Cir.2004); *see also, e.g., Mahgoub v. Miami Dade Community Coll.*, No. 05–11520, 2006 WL 952278, at *2 (11th Cir. Apr.13, 2006); *Price v. M & H Valve Co.*, 177 Fed.Appx. 1, at 11 n. 7 (11th Cir.2006); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir.2006); *Al–Amin v. Donald*, 165 Fed.Appx. 733, 740 (11th Cir.2006); *McGoy v. Ray*, 164 Fed.Appx. 876, 879 n. 2 (11th Cir.2006); *Stephens v. State Bd. of Pardons & Paroles*, No. 04–15995, 2005 WL 1635264, at *2 n. 2 (11th Cir. June 10, 2005); *McShane v. United States Att'y Gen.*, 144 Fed.Appx. 779, 788–89 (11th Cir.2005); *Cooley v. Great So. Wood Preserving*, 138 Fed.Appx. 149, 153 (11th Cir.2005); *Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) ("To permit a plaintiff to do otherwise would subject defendants to unfair surprise."); *Green Country Food Market, Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1279 (10th Cir.2004); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996); *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990); *Gaffney v. Corwine*, No. 1:04CV21–SPM/AK, 2005 WL 1684436, at *3 (N.D.Fla. May 16, 2005) (Report and Recommendation), *adopted by district court*, 2005 WL 1684421 (N.D.Fla. June 29, 2005); *Smith–Johnson v. Thrivent Fin. for Lutherans*, No. 803CV2551T30EAJ, 2005 WL 1705471, at *6 n. 8 (M.D.Fla. July 20, 2005).

Instead, "[a]t the summary judgment stage, the proper procedure for [P]laintiff[ ] to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.2004); *see also, e.g., Mahgoub v. Miami Dade Community Coll.*, No. 05–11520, 2006 WL 952278, at *2 (11th Cir. Apr.13, 2006). Plaintiff has not filed a Rule 15(a) motion, did not cite Rule 15(a) in the relevant portion of his Response to Defendants' Motion for Summary Judgment, did not attempt to demonstrate compliance with Rule 15(a), and has not demonstrated compliance with Rule 15(a).

■ Even if Plaintiff had properly sought amendment pursuant to Rule 15(a), the undersigned would recommend that the Court deny that request. Because Defendants have filed their Answer to the Complaint, Plaintiffs may amend the Comrplaint "only by leave of court or by written consent of the adverse party ...." Fed. R.Civ.P. 15(a). Upon application for leave to amend, the Court shall grant leave to do so "freely ... when justice so requires." *Id.* The decision whether to grant Rule 15(a) leave "is within the sound discretion of the trial court." *Jameson v. Arrow Co.*, 75 F.3d 1528, 1535 (11th Cir.1996). In exercising that discretion, the Court may deny leave to amend, *inter alia*, if Plaintiff sought the amendment after undue delay, if Plaintiff demonstrated bad faith or dilatory motive, if the amendment would cause Defendants undue prejudice, or if the amendment would be futile. *See, e.g., Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Jameson*, 75 F.3d at 1534–35. As discussed below, Plaintiff sought the amendment to Count I after undue delay, that delay would cause Defendants undue prejudice, and it appears that at least a portion of the proposed amendment would be futile.

Several facts demonstrate both Plaintiff's undue delay in seeking the amendment and Defendants' resulting prejudice. The discovery deadline and pre-trial motion filing deadlines have expired, and Defendants had no prior notice of Plaintiff's proposed claims. If the Court allowed the proposed amendment, Defendants could not conduct discovery or file pre-trial mo-

tions related to the amendment.[7] Even if the Court allowed Defendants to conduct discovery and file additional pretrial motions, Defendants likely would be required to re-depose Plaintiff and/or other individuals which it has already deposed, and possibly duplicate other work which it previously performed; and the Court would be required to continue trial, which is scheduled for June 12, 2006.

Trial is only approximately thirty-eight days from the date Plaintiff first requested the amendment, approximately thirty-one days from the date Defendants filed their Reply in support of their Motion for Summary Judgment (and could have first re-sponded to Plaintiff's request for leave to amend), approximately eighteen days from the date of this Report and Recommendation, and less than a week after objections to this Report and Recommendation are due, and therefore Defendants do not have time to adequately prepare a defense to Plaintiffs' proposed claim.

Plaintiff proffered *no* reason, let alone a *legitimate* reason, why he could not have sought that amendment earlier. Despite the fact that Plaintiff contends that "discovery confirms" the basis for the amendment, Plaintiff's Response (D.E.# 48), at 5,[8] Plaintiff was on notice of the basis of

**7.** At Plaintiff's deposition, even Plaintiff's counsel appeared to recognize the prejudice which could result to Defendants if Plaintiff amended the basis for his claims after the deposition and Defendants were unable to depose Plaintiff again. *See* Edwards Dep., at 278–79.

**8.** In violation of Local Rule 5.1.A.4, Plaintiff failed to paginate his Response to Defendants' Motion for Summary Judgment and at least one other document he filed with the Court. *See* D.E. # 38. In all future filings before this Court, Plaintiff and his counsel shall strictly comply with this Court's Local Rules. A future failure to comply with those Rules may result in a recommendation that the Court impose sanctions, possibly including but not limited to the striking of non-conforming documents.

Additionally, Plaintiff failed to cite legal authority in support of almost all, if not all, of his legal arguments. Plaintiff cited only one legal decision in his Response, and it was to support the uncontested (by Defendants) and non-controversial proposition that Florida Statute § 440.205 provides a cause of action for retaliatory discharge for pursuing a workers' compensation case. *See* D.E. # 48, at 6 n. 13 (citing *Smith v. Piezo Technology of Professional Administrators*, 427 So.2d 182 (Fla.1983)). Although the question of whether Florida Statute § 440.205 provides a cause of action for retaliatory discharge for pursuing a workers' compensation case may have been a disputed issue prior to the Supreme Court of Florida's 1983 decision in *Smith*, now—twenty-three years later—that is an unassailable proposition, which most if not all appellate and federal courts in Florida have explicitly recognized. *See, e.g., Borque v. Trugreen, Inc.*, 389 F.3d 1354, 1357 (11th Cir. 2004) ("If an employer violates this section, the employee has a cause of action for retaliatory discharge."); *Northern Ins. Co. of N.Y. v. Pelican Point Harbor, Inc.*, No. 3:05cv184/MCR/MD, 2006 WL 1285078, at *8 (N.D.Fla. May 5, 2006); *Branche v. Airtran Airways, Inc.*, 314 F.Supp.2d 1194, 1197 n. 3 (M.D.Fla.2004); *Scott v. Otis Elevator Co.*, 572 So.2d 902, 903 (Fla.1990); *Chase v. Walgreen Co.*, 750 So.2d 93, 95–96 (Fla. 5th DCA 1999); *Anderson v. TBA Partnership, Ltd.*, 733 So.2d 1032, 1033 (Fla. 2d DCA) (J. Altenbernd, dissenting), *review dismissed*, 727 So.2d 902 (Fla.1998) (Table); *Montes de Oca v. Orkin Exterminating Co.*, 692 So.2d 257, 259 (Fla. 3d DCA 1997); *Williams v. City of Ft. Walton Beach*, 691 So.2d 580, 583 (Fla. 1st DCA 1997); *Notarian v. Plantation AMC Jeep, Inc.*, 567 So.2d 1034, 1035–36 (Fla. 4th DCA 1990); *Otis Elevator v. Scott*, 551 So.2d 489 (Fla. 4th DCA 1989), *approved*, 572 So.2d 902 (Fla.1990). It is puzzling that Plaintiff chose to cite authority for an undisputed, non-controversial proposition, yet failed to cite authority regarding any relevant, disputed issues and failed to assist the Court (as well as to assist Defendants in understanding Plaintiff's arguments) by failing to cite authority in support of his arguments in opposition to summary judgment.

In fact, Plaintiff provided an incomplete and inaccurate citation to the only decision he

that proposed claim by December of 2004, when he allegedly was not paid the last of the wages at issue; and even if he could only confirm the claim through discovery, he certainly did not timely request the amendment when he received whatever information he contends "confirmed" the basis for the claim.[9]

Because Plaintiff requested leave to amend after undue delay, and because Defendants would be unduly prejudiced if the Court granted Plaintiff's request, Plaintiff is not entitled to amend the Complaint. *See, e.g., Saewitz v. Lexington Ins. Co.,* 133 Fed.Appx. 695, 700 (11th Cir.2005) ("The district court did not commit a 'clear abuse of discretion,' ... when it denied Lexington leave to amend more than six months after the deadline so Lexington could assert a new affirmative defense and reopen discovery more than a month after the already-extended time for discovery had closed. This case is the classic example of an 'undue delay in filing.' ") (citations omitted); *Jennings v. BIC Corp.,* 181 F.3d 1250, 1258–59 (11th Cir.1999) ("Here, the plaintiffs waited to move for leave to amend until thirty-four months after their original complaint was filed. Their motion came two months before the trial was scheduled to begin, and five months after the district court's deadline for amending the pleadings. The motion provides no basis for the delay other than that 'it has recently come to [Plaintiffs'] attention that certain failures and derelictions of Defendant BIC Corporation give rise to an additional cause of action,' without any further explanation. We are unable to say that the court abused its discretion in denying leave to amend because of undue delay.") (alteration in original); 166 F.3d 1157, 1162 (11th Cir.1999) ("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided."); *Jameson v. Arrow Co.,* 75 F.3d 1528, 1534–35 (11th Cir.1996) (Affirming denial of motion to amend which had been based on district court's findings that the plaintiff "sought to amend the complaint ten months after she retained counsel, discovery was closed, the complaint had been amended twice, and Arrow had filed two motions for summary judgment ...," and holding in part: "Though we are mindful of the fact that Jameson was unable to obtain important information needed to pursue this claim until Houston Payne's deposition in March of 1994, it appears that the basic facts giving rise to the retaliation theory were available when the second amended com-

did cite. That decision, *Smith v. Piezo,* appears in volume 427, not volume 425 (as Plaintiff wrote), of the So.2d reporter; and Plaintiff failed to specify the page of any volume of that reporter—even the incorrect volume he cited—on which he believed *Smith* appears.

9. Plaintiff has not disclosed what evidence he obtained through discovery which allegedly confirmed the basis of the proposed claim, let alone the date he received that evidence or any reason he was not aware of the basis of the proposed claim before he received that evidence. The only evidence he has cited in support of the proposed claim is his own affidavit which he executed on May 5, 2006. *See* D.E. # 48, at 1, 5; Edwards May 5, 2006,

Aff. ¶¶ 3–5. In fact, no such evidence exists in Plaintiff's first affidavit, which he executed only ten days earlier, on April 25, 2006, and he has not explained how he acquired that knowledge between April 25, 2006, and May 5, 2006. Because Plaintiff failed to clarify those and other issues, the only conclusion the Court can draw is that Plaintiff merely decided to amend his claim when it became clear to him that Defendants were entitled to summary judgment as to Count I, although the Court actually does not need to rely on such an inference regarding Plaintiff's intent to conclude that Plaintiff engaged in undue delay, that Defendants were prejudiced by that delay, and that the court should deny Plaintiff's request to amend Count I.

plaint was filed. The considerable delay in seeking to amend the complaint for the third time, coupled with the request to amend subsequent to the filing of the defendant's motion for summary judgment, appears to have been unwarranted. The district court did not abuse its discretion in denying this request.").

Although the Court could deny leave to amend solely on those grounds, the undersigned notes that Defendants could suffer additional prejudice if the Court allowed the requested amendment. If Plaintiff prevailed on the proposed FLSA claim for unpaid wages, Plaintiff would be entitled to payment of fees and costs from Defendants, *see, e.g.*, 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416 & n. 5, 98 S.Ct. 694, 697 & n. 5, 54 L.Ed.2d 648 (1978) (citing § 216(b) of the FLSA as one example of a statute which "make[s] fee awards mandatory for prevailing plaintiffs"); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir.1985) ("Section 216(b) of the Act makes fee awards mandatory for prevailing plaintiffs."); and if Plaintiff prevailed on the proposed Florida law claim for unpaid wages, then Plaintiff could move for a discretionary award of fees, *see, e.g.*, Fla. Stat. § 448.08. In light of the amount of litigation which has taken place, those fees and costs could be considerable, despite the fact that the underlying claim is relatively small. Assuming the proposed claim would have merit, if Plaintiff had asserted that claim in a timely manner then Defendants likely could have ended the litigation regarding that claim by tendering an amount equal to Plaintiff's full damages, including fees and costs— which would have been relatively low because significant litigation would not have taken place yet. *See, e.g., Dail v. George A. Arab, Inc.*, 391 F.Supp.2d 1142, 1145 (M.D.Fla.2005) ("Where a plaintiff is offered full compensation on his FLSA claim, no compromise is involved and judicial approval is not required."); *Mackenzie v. Kindred Hosps. East, L.L.C.*, 276 F.Supp.2d 1211, 1217 (M.D.Fla.2003) ("Furthermore, *Lynn's Food Stores [v. U.S. ex rel. Dept. of Labor*, 679 F.2d 1350 (11th Cir.1982)] addresses judicial oversight of 'compromises' of FLSA claims .... Since the plaintiff has been offered full compensation on his claim, this case does not involve a compromise. There is no need for judicial scrutiny where, as here, the defendant represents that it has offered the plaintiff more than full relief, and the plaintiff has not disputed that representation."). Instead, because of Plaintiff's undue delay, if the proposed claim were meritorious then Defendants would face the possibility of defending against a motion for a large amount of fees and costs which it might not have had to face if Plaintiff had not unreasonably delayed seeking amendment. That prejudice might be diminished to some extent because even under the FLSA, Plaintiff would be entitled only to *reasonable* fees and costs if he prevailed, and Defendants would have a strong argument that fees and costs incurred prior to asserting the claim were not reasonably related to the claim. At a minimum, however, Defendants could be forced to litigate that issue and face the possibility that the Court would reject that argument, which is a risk Defendants would not have had to face if Plaintiff had timely sought leave to amend the Complaint.

Finally, at least a portion of the proposed amendment appears to be futile. At a minimum, as discussed below, the precise basis for the claim is unclear and at least portions of the claim appear to be based on

contradictory and/or inconsistent evidence, which are additional reasons why Defendants would have to incur significant expenses and devote significant additional time—more time than is available before trial—to properly defend against the claim.

The proposed claim is based on three alleged failures by Defendants to pay Plaintiff minimum wages: (1) $308 (which represents fourteen hours at $22 per hour) which Defendants allegedly did not pay him for work performed on September 15, 2004; (2) $300 which Defendants allegedly did not pay Plaintiff "under the Technician Pay Plan" [10]; and (3) "[n]on-payment of wages in the amount of $588.00 attributed to the last fraction of a week of employment [which] reduces [Plaintiff's] compensation to a rate below minimum wages." D.E. # 48, at 5.

Plaintiff has not directed the Court to any evidentiary basis for the third proposed basis for that claim, and he has not demonstrated how he calculated the alleged $588.00 non-payment. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.2004) ("Even if Gilmour were correct in her assertion that new claims may be raised by a non-movant in response to a summary judgment motion, her 'breach of duty' claim is without support in the record."). With regard to the $300 allegedly unpaid pursuant to the "Technician Pay Plan," Plaintiff's allegation and his affidavit testimony appear to contradict his deposition testimony; and Plaintiff has not explained or presented evidence to dispute Defendant's evidence, which appears to demonstrate that Defendants paid Plaintiff the proper amount. In

Plaintiff's May 5, 2006, affidavit (but not in his April 25, 2006, affidavit), he testified that Defendants failed to pay the $300. *See* Edwards's May 5, 2006, Aff. ¶ 5. In Plaintiff's deposition, however, he appears to have conceded that he received payment for "[his] half" of that amount on December 18, 2004. *See* Plaintiff's Dep., at 129 (testifying that on December 18, 2004, Plaintiff received a check for "[his] half of the Christmas bonus"). Defendants submitted that December 18, 2004, check and Defendants' payroll records, *see* D.E. # 49, Exhs. 4–5, which, consistent with Defendant Jack Niles's testimony, demonstrate that Plaintiff was paid more than his share of the $300 which he claims he was owed. That check represented $352.83 Defendants owed to Plaintiff (*i.e.*, more than the $300 he claims Defendants owe him), minus $27 withheld for "employee taxes" and $162.91 withheld for child support payments, resulting in a net payment to Plaintiff of $162.92. Plaintiff's signature appears on the back of that check, and he has not disputed that he received it and deposited it in his bank account, let alone presented *evidence* to that effect. He also has not disputed, let alone presented evidence, that that check accurately represented those wages minus appropriate withholdings/deductions, and he has not disputed that the withholdings/deductions were proper. In fact, Plaintiff's deposition testimony—specifically, his testimony that he received "*my half* of the Christmas bonus ...,*" Edwards Dep., at 129 (emphasis added)—suggests that he understood that after proper deductions, including a 50% deduction of the after-tax amount for

---

**10.** Pursuant to that plan, Defendants withheld twenty-five cents per hour from each employee's wages, then matched that amount and paid the entire fifty-cents per hour to the employee in December. *See, e.g.*, D.E. # 48, at 2 ¶ 2.a. That payment sometimes was referred to as a Christmas bonus. *See* Defendants' Reply (D.E.# 49), Exh. 2 (written "Technician Pay Plan," which describes the December payment pursuant to the plan as the "Christmas bonus").

child support payments, he was entitled to a net payment of only approximately half of the amount due under the Technician Pay Plan.

It therefore is recommended that the Court grant summary judgment in Defendants' favor as to Count I and deny Plaintiff's request to amend the Complaint.

### Count II

In Count II, Plaintiff alleges race discrimination in violation of both Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. Although in Count II Plaintiff explicitly contended only that he suffered "disparate and demeaning treatment based on his race ...," Compl. ¶ 26, but not that he suffered retaliation in violation of Title VII and § 1981, Defendants apparently have liberally construed Plaintiff's factual allegations in earlier portions of the Complaint to indicate that Plaintiff also asserted a retaliation claim in Count II, *see* D.E. # 42, at 6 ("In Count II, Plaintiff alleges disparate treatment *and retaliation* based on his race in violation of both Title VII and 42 U.S.C. § 1981.") (emphasis added). Consistent with Defendants' interpretation, the Court construes Count II to include both disparate treatment claims and retaliation claims.

#### Disparate treatment

Disparate treatment claims brought pursuant to Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." *Embry v. Callahan Eye Found. Hosp.*, 147 Fed. Appx. 819, 821 n. 1 (11th Cir.2005) (quoting *Std. v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir.1998)). Specifically, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See, e.g., Embry,* 147 Fed.Appx. at 827–28;

*Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir.2001). If Plaintiff establishes a *prima facie* case, then Defendants must "articulate some legitimate, nondiscriminatory reason for the" adverse employment action. *Silvera,* 244 F.3d at 1258; *see also, e.g., Embry,* 147 Fed.Appx. at 827. If Defendants articulate a legitimate, non-discriminatory reason, then Plaintiff must demonstrate that the proffered reason was pretext. *See, e.g., Embry,* 147 Fed.Appx. at 827; *Silvera,* 244 F.3d at 1258. However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Silvera,* 244 F.3d at 1258; *see also, e.g., Embry,* 147 Fed.Appx. at 827.

Before analyzing those elements of Plaintiff's disparate treatment claim, the Court must determine the precise factual basis of that claim. Plaintiff's Complaint contains three possible factual bases for that claim: (1) Defendants paid Plaintiff $3.00 per hour less than they paid a white auto mechanic whom Defendants hired in March of 2002[11] and who had less experience than Plaintiff, *see* Compl. ¶ 12; (2) Defendants gave white employees pay increases but did not give Plaintiff a pay increase, *see id.;* and (3) Defendants "wrote up" Plaintiff for not providing them notice of his September 15, 2004, accident, despite the facts that (a) "white employees were never written up if they had not reported an accident" and (b) "in fact ... [P]laintiff was written up for no[t] reporting when he did in fact report the incident." *Id.* ¶ 15.

"A plaintiff establishes a *prima facie* case of disparate treatment by showing that she was a qualified member of a pro-

---

11. Some evidence suggests, if not proves, that Defendants hired the relevant employee, Keith Estep, in 2003, not 2002. The question of whether Defendants hired Estep in 2002 or in 2003 is not, however, relevant to this Court's analysis.

tected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson v. B/E Aerospace, Inc.,* 376.F.3d 1079, 1087 (11th Cir. 2004); *see also Embry,* 147 Fed.Appx. at 827–28. Defendants do not dispute that Plaintiff was a qualified member of a protected class. They do, however, dispute whether he can demonstrate that he was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class. In order to demonstrate "that employees are similarly situated, ... [P]laintiff must show that the employees are similarly situated in all relevant respects." *Knight v. Baptist Hosp. of Miami, Inc.,* 330 F.3d 1313, 1316 (11th Cir.2003) (citation and internal quotation marks omitted); *see also, e.g., Embry v. Callahan Eye Found. Hosp.,* 147 Fed.Appx. 819, 829 (11th Cir.2005); *Cooley v. Great So. Wood Preserving,* 138 Fed.Appx. 149, 157 (11th Cir.2005). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson,* 376 F.3d at 1091 (citing *Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1259 (11th Cir.2001)); *see also, e.g., Embry,* 147 Fed.Appx. at 829.

■ With regards to the white employee whom Plaintiff claims had less experience but whom Defendants allegedly paid $3.00 per hour more than they paid Plaintiff, Plaintiff clarified in his deposition that the white employee to whom he refers is Keith Estep. *See* Edwards Dep., at 170–79; Plaintiff's June 29, 2004, EEOC charge (Exh. 15 to Edwards Dep.). Additionally, Defendants identified that employee as Keith Estep in their Statement of Material Facts in Support of Motion for Summary Judgment, *see* D.E. # 43, at 3–4

¶ 7, and Plaintiff did not dispute that fact, so that fact is deemed admitted. *See* S.D. Fla. L.R. 7.5.D.

For at least two reasons, Keith Estep was not similarly situated to Plaintiff, and therefore Plaintiff failed to establish a *prima facie* case regarding the relevant portion of Count II.

First, the undisputed evidence establishes that Estep had many more years experience as a GM or Nissan mechanic *at GM or Nissan authorized dealerships* than Plaintiff had. *See, e.g., Cooper v. So. Co.,* 390 F.3d 695, 735–36 (11th Cir.2004); *id.* at 745 ("As for Wilson's compensation claim, the district court concluded that summary judgment was appropriate because Wilson failed to establish a *prima facie* case.... Wilson has not established that the proposed comparators had similar levels of experience or education...."). Defendants have presented evidence that Estep had eighteen years experience in that regard. *See, e.g.,* Niles Aff., at 3 ¶ 7.[12] Although Plaintiff disputes that Estep had eighteen years experience at GM or Nissan authorized dealerships, the only contrary evidence he presented is that Estep had ten years experience at GM or Nissan authorized dealerships when Plaintiff had three years of such experience, and he conceded that his claim was based solely on the fact that Defendants paid someone with seven years more experience at GM/Nissan dealerships than Plaintiff more than they paid Plaintiff. *See, e.g.,* Plaintiff's Answers to Defendants' Initial Interrogatories (Exh. 10 to Edwards Dep.) ¶ 7.b (stating that Estep had "10 years [experience] as a mechanic in a GM dealership"); Edwards Dep., at 41 (Plaintiff's testimony that he never worked for a GM dealership before working for Morrison); *id.* at 170,

---

12. Niles's affidavit contains two paragraphed numbered 6 and 7, one set on pages two to three and a second set contained entirely on page three.

176–77; *id.* at 179 (Q: "So the only basis for your claim that you were discriminated against on the basis of your race is because one person, Keith Estep, made more money than you even though by your own admission, he had at least seven years more GM Nissan experience than you did? . . . Is that accurate?" A: "Yes."). Because Niles Sales & Service, Inc. was a GM and Nissan dealership, that difference in experience demonstrates that Plaintiff and Estep were not similarly situated for purposes of Plaintiff's *prima facie* case. In fact, Plaintiff conceded that if Estep actually had the most GM experience and credentials, that fact would justify Estep receiving more money that Plaintiff. *See, e.g.,* Edwards Dep., at 195–96.

Additionally, even assuming that Estep did not have *any* experience at GM or Nissan dealerships before Defendants hired him—a conclusion which the record evidence does not support, and which even Plaintiff's testimony explicitly contradicts—or that Estep did not have any GM or other certifications when Defendants hired him,[13] Plaintiff has not presented evidence which disputes Defendants' evidence that they *believed* Estep had eigh-

teen years of such experience and had the appropriate certifications when they hired him; and in fact, at one point during his deposition he *admitted* that Defendants believed Estep was qualified when they hired him. *See, e.g.,* Edwards Dep., at 73 ("[T]hey hired a GM guy who they thought was qualified . . . . That would be Keith Estep."); *id.* at 195–96 (Plaintiff's testimony that he did not know what credentials Estep represented to Defendants that he had and did not know whether Estep represented to Defendants that he had credentials which would warrant a higher rate of pay than Plaintiff received; and Plaintiff's concession that if Estep actually had the most GM experience and credentials, that would justify Estep receiving more money that Plaintiff); *id.* at 261 (testifying that did not know whether Defendants knew that Estep's credentials had actually expired when Defendants hired him, despite the fact that Estep had represented that he had those credentials).

Even if Estep did not *in fact* have that experience or if those certifications had *in fact* lapsed, that would be irrelevant to the Court's analysis because there is no rec-

---

**13.** The only "evidence" Plaintiff submitted in an attempt to rebut those facts is his unsupported, conclusory statement that "Estep could not have been working at a GM dealership without any GM or ASE Certifications at all." Edwards Apr. 25, 2006, Aff. ¶ 12. First, to the extent that statement could be interpreted to imply that Estep had no GM dealership experience, it contradicts Plaintiff's own statements and representations that Estep had ten years of such experience. Also, even if that were admissible evidence, it would be irrelevant to the question of whether Estep had eighteen years GM experience because Plaintiff has not alleged, let alone presented evidence, that Estep lacked those qualifications at the time he allegedly worked at GM dealerships. Even if the Court accepted as true Plaintiff's conclusory, eleventh-hour affidavit testimony, that testimony implies that Estep *did have* those certifications at one time

but subsequently lost them. *See id.* ¶ 11 ("Estep did not *maintain* his GM Master Certification because he was not working for a GM dealership. . . . In the time that Estep was employed by Niles, about a year and a half, he did not *regain* his GM Master Certification or ASE Master Certification.") (emphasis added).

Plaintiff's deposition testimony and September 16, 2004, letter to EEOC Investigator Laura Stubblefield confirm that even Plaintiff believes that Estep *did* have those certifications at some point. *See* Edwards Dep., at 260 (testifying that Estep's credentials had expired); Edwards Dep., Exh. 18, at 1–2 ("The records will show at the time Keith was hired, his General Motors (GM) training certifications had elapsed along with his Automotive Service Excellence (ASE) certifications.").

ord evidence that Defendants were aware of those alleged misrepresentations by Estep when they hired him at a pay rate of $25 per hour, *i.e.* $3 per hour higher than Plaintiff's rate. *See, e.g., Embry v. Callahan Eye Found. Hosp.*, 147 Fed.Appx. 819, 829 (11th Cir.2005) ("Where employees have engaged in similar conduct, *but the supervisor is not aware of one employee's conduct*, this conduct may not be considered in determining whether the employees are 'similarly situated.'") (emphasis added); *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1317 n. 5 (11th Cir.2003) ("While Arnold's 'feud' with Dr. Puente might have justified giving her a decision-making day, unless Ryder, Hotchkiss, or Theisen (Arnold and Knight's supervisors) knew of the events, the events cannot be considered in determining whether Knight and Arnold are similarly situated."); *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir.2001) ("Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent."); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir.1984) (" '[I]f an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown.' ") (quoting *Chescheir v. Liberty Mut. Ins. Co.*, 713 F.2d 1142, 1148 (5th Cir.1983)). Additionally, Plaintiff's assertion that Defendants failed to verify Estep's certifications, *see* Edwards Apr. 25, 2006, Aff. ¶ 11, is irrelevant because the fact that Defendants may have engaged in poor business practices

does not render those practices discriminatory.[14] *See, e.g., Cooley v. Great So. Wood Preserving*, 138 Fed.Appx. 149, 157, 159 (11th Cir.2005); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) (*en banc*).

Second, the undisputed evidence demonstrates that Estep and Plaintiff were hired to perform different jobs and that Estep's job was closer to a management position than Plaintiff's job, two facts which prove that they were not similarly situated.[15] *See, e.g., McDonell v. Gonzales*, 151 Fed. Appx. 780, 782–83 (11th Cir.2005) ("Thus, appellant has not shown that he was similarly situated to Bradley and McCann in terms of employment duties and positions."); *Cooper v. So. Co.*, 390 F.3d 695, 745 (11th Cir.2004) ("As for Wilson's compensation claim, the district court concluded that summary judgment was appropriate because Wilson failed to establish a *prima facie* case. Specifically, Wilson failed to identify a similarly situated comparator. On appeal, Wilson asserts not only that she was paid less than similarly situated white employees, but also that white employees occupying 'lower' positions were paid more generously. However, Wilson has not established that the proposed comparators had similar levels of experience or education, nor has she established the comparators' job responsibilities with any particularity. Wilson's assertion that these individuals were 'lower' employees is offered in a wholly conclusory manner, based on her own subjective belief.[16] As a result, Wilson's argument fails.").

**14.** This is particularly true in light of the fact that Plaintiff has not alleged, let alone presented evidence, that Defendants required verification of the certifications of non-white applicants for Estep's position but failed to verify the certifications of white applicants for that position.

**15.** If Plaintiff alleged that employment rules were applied differently to Estep and Plaintiff,

as opposed to arguing that Estep and Plaintiff were paid at different rates, then the fact that they performed different jobs might not be relevant to the Court's analysis. *See Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir.1999).

**16.** To the extent Plaintiff testified that Estep's position was a "lower" position than Plaintiff's, he did so in a wholly conclusory manner

Plaintiff was hired as a general mechanic, whereas Estep was hired as a lead technician. *See, e.g.,* Niles Aff., at 2 ¶ 5, 2–3 ¶ 7, 3 ¶ 6, 3–4 ¶ 7; Edwards Dep., at 106–07, 191–93, 260. Even accepting as true Plaintiff's contention that Estep was merely a *technician* and not a *lead technician*, even Plaintiff conceded that there s a difference between his position and Estep's position. *See* Edwards Dep., at 192 ("There is a difference between a technician and a mechanic.... A technician is a person who can replace a part.... A mechanic can repair that part.").

However, the record evidence does not support Plaintiff's conclusory assertion that Estep was hired to be merely a technician and not a lead technician. Plaintiff concedes that a lead technician job is "getting more toward management ...," Edwards Dep., at 194, but he asserts that Estep was not hired as a lead technician. Even Plaintiff, however, referred to Estep as "our master technician ...," *id.* at 260; testified that Estep told him he had been hired as the lead technician, *see id.* at 193–94; and conceded that he did not know what experience and credentials Estep told Defendants he had, or whether that experience and those credentials would have justified Defendants' hiring of Estep as a lead technician at a higher pay rate than Plaintiff received, *see id.* at 194–95. Other than Plaintiff's self-serving, conclusory assertions, he has presented no evidence to contradict Defendants' evidence (or Estep's statement to Plaintiff) that Defendants hired Estep as a lead technician, a position which would be closer in management than Plaintiff's position and which would justify Estep's higher rate of pay. In fact, near the end of Plaintiff's deposition, he conceded that he had no basis to

dispute Defendants' and Estep's representations regarding the position for which Estep was hired. *See* Edwards Dep., at 263–64 (Q: "Do you know differently?" A: "As in writing, no. Other than what he said about what position he was hired for, I only know what [Defendants' service manager, Bob Oulette] said he was hired for ...." Q: "And do you know if Mr. Estep was hired in a managerial capacity?" A: "No."). Also, once again, even if it turns out that Estep did not *actually have* the qualifications which he represented to Defendants that he had, that would not change the fact that Defendants actually believed that Estep had those qualifications and therefore were justified in hiring him at a pay rate $3 per hour higher than Plaintiff's pay rate. *See, e.g., Embry v. Callahan Eye Found. Hosp.,* 147 Fed. Appx. 819, 829 (11th Cir.2005); *Knight v. Baptist Hosp. of Miami, Inc.,* 330 F.3d 1313, 1317 n. 5 (11th Cir.2003); *Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1262 (11th Cir.2001); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1186 (11th Cir.1984).

Plaintiff also claims that Estep could not have been a lead technician because he actually performed only two of the twenty-three duties of that position. *See* Edwards Apr. 25, 2006, Aff. ¶ 13. Plaintiff's testimony as to that fact is based on speculation regarding potential hearsay, which is not evidence the Court may consider in response to Defendants' Motion for Summary Judgment. Specifically, Plaintiff clarified that his testimony is based on information which, according to Plaintiff, can be verified by "the General Manager, [the] Service Manager," and unidentified current and former "[m]echanics." *Id.* Plaintiff has not presented the testimony

based on his subjective belief, similar to the *Cooper* plaintiff. *See* Edwards Dep., at 192–93.

(or even the names) of those alleged witnesses, or even stated that those individuals actually made statements to verify that fact or relayed the contents of those statements (which would still be inadmissible hearsay), but rather has stated only his belief that those individuals *could verify* those facts. *See, e.g., Macuba v. Deboer,* 193 F.3d 1316, 1322–23 (11th Cir.1999) (holding that hearsay generally may not be considered on a motion for summary judgment, but noting that it may be considered in narrow circumstances when it may be reduced to "admissible form" or "admissible evidence at trial") (citations omitted); *United States v. Brown,* 546 F.2d 166, 174 (5th Cir.1977); *Broadway v. City of Montgomery, Ala.,* 530 F.2d 657, 661 (5th Cir. 1976) ("Evidence inadmissible at trial cannot be used to avoid summary judgment."); *Lopez v. Ingram Micro, Inc.,* No. 95–2004–Civ–Nesbitt, 1997 WL 401585, at *7 (S.D.Fla. Mar.18, 1997) (J. Nesbitt) (holding that a plaintiff may not rely on evidence which would be inadmissible at trial to defeat summary judgment).; *cf., e.g., Broadway,* 530 F.2d at 660 ("The affidavit contains nothing more than a recital of unsupported allegations conclusory in nature. As such it is insufficient to avoid summary judgment.").

Additionally, even if it were true that Estep actually performed only two of his twenty-three duties, Plaintiff has not alleged, let alone presented evidence, that Defendants did not hire Estep to perform the duties of a lead technician. Even accepting Plaintiff's affidavit testimony as true, standing alone it demonstrates nothing more than the fact that Estep failed to perform the duties for which Defendants hired him. Defendants' failure to fire an employee who does not complete all of his tasks may constitute poor business judgment, but it does not render Defendants' failure to pay Plaintiff the same amount that it paid Estep *discriminatory,* particu-

larly in light of the fact that Estep still had more GM and/or Nissan dealership experience than Plaintiff. *See, e.g., Cooley v. Great So. Wood Preserving,* 138 Fed.Appx. 149, 157, 159 (11th Cir.2005); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997) (*en banc* ).

Even assuming Plaintiff had demonstrated a *prima facie* case as to that portion of Count II, he had the burden to "produce sufficient evidence for a reasonable factfinder to conclude that *each of* the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport,* 229 F.3d 1012, 1037 (11th Cir. 2000) (*en banc* ) (emphasis added); *see also, e.g., Embry v. Callahan Eye Found. Hosp.,* 147 Fed.Appx. 819, 821 n. 1 (11th Cir.2005); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997) (*en banc* ) (requiring a plaintiff to rebut "all of the defendant's proffered nondiscriminatory reasons for its actions" to avoid judgment as a matter of law). Plaintiff has not done so. For example, Plaintiff has not presented evidence to rebut Defendants' legitimate, non-discriminatory reason that it paid Estep more than Plaintiff based on the fact that Estep had more GM/Nissan dealership experience than Plaintiff had. *See, e.g., Mahgoub v. Miami Dade Community Coll.,* No. 05–11520, 2006 WL 952278, at *2 (11th Cir. Apr.13, 2006) ("And even assuming that Plaintiff established a *prima facie* case of discrimination, he has not shown that MDCC's reason for the pay differential between Plaintiff and Howard—Howard's seniority—was a pretext for discrimination."). Additionally, Plaintiff has not rebutted Defendants' legitimate, non-discriminatory reason that it paid Estep a higher hourly rate because he had a position which was closer to management-level than Plaintiff's position. Finally, Plaintiff has not rebutted Defendants' legitimate, non-discriminatory reason that

it hired Estep in part based on his representations regarding his certifications. Once again, the fact that those certifications may have *in fact* lapsed is irrelevant because there is no record evidence that Defendants were aware of that alleged misrepresentation by Estep, *see, e.g., Embry v. Callahan Eye Found. Hosp.*, 147 Fed.Appx. 819, 829 (11th Cir.2005); *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1317 n. 5 (11th Cir.2003); *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir.2001); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir.1984); and Plaintiff's assertion that Defendants failed to verify Estep's certifications, *see* Edwards Apr. 25, 2006, Aff. ¶ 11, is irrelevant because the fact that Defendants may have engaged in poor business practices does not render those practices discriminatory,[17] *see, e.g., Cooley v. Great So. Wood Preserving*, 138 Fed.Appx. 149, 157, 159 (11th Cir.2005); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997) (*en banc*).

Another fact which provides further evidence that Plaintiff cannot demonstrate discrimination is that Plaintiff's testimony reveals that three potentially similarly-situated white, non-Hispanic mechanics and one potentially similarly-situated Hispanic mechanic were paid at *lower* hourly rates than Plaintiff. *See* Edwards Dep., at 177–79. In Plaintiff's deposition, he identified no white, non-Hispanic mechanics and only one Hispanic mechanic—Chris Barrera—whom Defendants paid at a higher hourly rate than Plaintiff. *See id.* at 170–76, 225–26. Plaintiff, however, has not based his claim on the fact that Barrera received a higher hourly rate than Plaintiff; and even if Plaintiff had based his claim on that fact, Plaintiff would not be able to demonstrate that he and Barrera were similarly situated or that Defendants' reasons for paying Barrera a higher hourly rate were pretext for discrimination.

For a while, Defendants paid Plaintiff and Barrera at the same hourly rate. *See* Edwards Dep., at 170. Eventually, however, Defendants gave Barrera a raise to $23 per hour, $1 per hour more than Plaintiff received. *See id.* at 170–73. Despite Plaintiff's conclusory statement that he was much more qualified than Barrera, *see id.* at 225, Plaintiff conceded that Barrera had much more experience working at a GM or Nissan dealership than Plaintiff had, *see* Edwards Dep., at 176–77 (Q: "How many years experience did you have working at a GM or Nissan dealership?" A: "That was my first time working at a GM or Nissan dealership." Q: "How many years did Chris Barrera have?" A: "About 20 years."), a fact which demonstrates that the two employees were not similarly situated, *see Cooper v. So. Co.*, 390 F.3d 695, 745 ("As for Wilson's compensation claim, the district court concluded that summary judgment was appropriate because Wilson failed to establish a *prima facie* case.... Wilson has not established that the proposed comparators had similar levels of experience or education ...."). Although Plaintiff may have attempted to later contradict his own testimony by *implying* that Barrera's only jobs had been at Morrison and at Niles Sales & Service, Inc. and that Barrera had begun working at Morrison sometime close to when Plaintiff had begun working at Morrison, *see* Edwards Dep., at 225–26, Plaintiff at most implied that fact (and his

---

**17.** Once again, this is particularly true in light of the fact that Plaintiff has not alleged, let alone presented evidence, that Defendants required verification of the certifications of non-white applicants for Estep's position but failed to verify the certifications of white applicants for that position.

only specific testimony at that point in his deposition was that Barrera had worked at a GM or Nissan dealership "for a number of years ...," *id.* at 225); did not explain any potential conflict with his earlier, clear testimony regarding Barrera's higher level of relevant experience; and even his later, contrary implication was based on inadmissible hearsay.

Also, it is undisputed that Defendants offered Plaintiff a pay raise to $23.50 per hour, which would have been higher than Barrera's pay rate. *See, e.g.,* Edwards Dep., at 171–73. Plaintiff never received that raise, and the parties dispute whether Plaintiff accepted or rejected that offer of a raise. Defendants presented evidence that Plaintiff rejected that raise because he was insulted by it; and although Plaintiff admits that he told Defendant Jack Niles that he was "insulted" by that raise (because he believed he should have received a much higher raise), to a pay rate which nobody was earning at Niles Sales & Service, Inc., *see id.* at 172 (Q: "Sir, was anybody there earning that kind of money?" A: "No."), he contends that he still accepted the raise. *See, e.g.,* Edwards Dep., at 171, 173. Another fundamental problem with Plaintiff's attempts to compare his pay rate to Barrera's—and in fact with Plaintiff's Count II in its entirety—is that even according to Plaintiff's testimony, Defendants offered him a raise to make him the highest paid mechanic *regardless of race,* and if Defendants retracted their offer to pay that raise, it was only because Jack Niles was angry that Plaintiff had stated that he was "insulted" by the offer and did not show any gratitude. If Niles took that offer off the table for those reasons, then Niles did not take the offer off the table for *racially discriminatory* reasons, and even assuming Niles's reasons for doing were inappropriate or constituted unsound business judgments, they do not support a racial discrimination claim.

As discussed *supra,* Plaintiff's second ground in support of Count II is that Defendants gave white employees pay increases but did not give Plaintiff a pay increase. *See* Compl. ¶ 12. Plaintiff did not raise that ground in his Response to Defendants' Motion for Summary Judgment and therefore has abandoned this potential basis for relief in Count II. *See, e.g., Iraola & CIA, S.A. v. Kimberly–Clark Corp.,* 325 F.3d 1274, 1284–85 & n. 6 (11th Cir.2003); *Road Sprinkler Fitters Local U. No. 669 v. Ind. Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir.1994). Even if Plaintiff were still pursuing Count II on that basis, Plaintiff has failed to establish a *prima facie* case because he has failed to direct the Court to evidence identifying any white employee, let alone a white employee similarly situated to Plaintiff in all relevant respects (*e.g.,* a white employee with similar experience and qualifications), who received a raise to more than $22.00 per hour.[18] *See, e.g., Knight v. Baptist Hosp. of Miami, Inc.,* 330 F.3d 1313, 1316 (11th Cir.2003).

As discussed *supra,* Plaintiff's third ground in support of Count II is that Defendants "wrote up" Plaintiff for not providing them notice of his September 15, 2004, accident, despite the facts that (a) "white employees were never written up if they had not reported an accident" and (b) "in fact ... [P]laintiff was written up for no[t] reporting when he did in fact report the incident." Compl. ¶ 15. Similar to the

18. Although Plaintiff alleges that Keith Estep was paid more than $22.00 per hour, Plaintiff has not alleged or presented evidence that Estep received a raise to that level, as opposed to being hired at that level, and as the Court discussed *supra,* Estep was not similarly situated to Plaintiff.

previous ground, Plaintiff did not raise this ground in his Response to Defendants' Motion for Summary Judgment, and therefore he has abandoned this potential basis for relief in Count II. *See, e.g., Iraola & CIA, S.A. v. Kimberly–Clark Corp.*, 325 F.3d 1274, 1284–85 & n. 6 (11th Cir.2003); *Road Sprinkler Fitters Local U. No. 669 v. Ind. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir.1994).

Even if Plaintiff were still pursuing Count II on that basis, Plaintiff has failed to establish a *prima facie* case because he has failed to direct the Court to evidence identifying any white employee, let alone a white employee similarly situated to Plaintiff in all relevant respects (*e.g.*, involved in a similar accident), who was not written up when Defendants learned that that employee had failed to report an accident. *See, e.g., Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). Although he identified other employees who allegedly failed to report accidents, *see* Edwards Dep., at 181–83, he conceded that he did not know whether those employees received written warnings for failing to do so, *see id.* at 183.

Additionally, although not necessary to determine that Plaintiff failed to prove a *prima facie* case, the record evidence, including Plaintiff's own testimony, demonstrates that contrary to Plaintiff's allegation in the Complaint, Plaintiff in fact failed to report the accident immediately in accordance with Defendants' company policy, but instead reported it on a later date [19] and then attempted to explain why

**19.** Plaintiff has made contradictory statements as to when he reported the accident. At one point during his deposition, he testified that, consistent with his allegations in the Complaint, he reported the accident on the "same day" it occurred, *i.e.*, September 15, 2004. Edwards Dep., at 165. When Defendants' counsel pointed out the discrepancy between that statement and Plaintiff's other statements that he first reported the accident on later dates, Plaintiff claimed that he reported the fact that the fuel tank fell—but not the fact that it fell on or almost on him, or the fact that he sustained an injury—on September 15. *See id.*

In other portions of Plaintiff's deposition, he testified that he reported the accident and his shoulder injury the next day, *i.e.*, September 16, 2004. *See* Edwards Dep., at 251; *see also id.* at 157. Additionally, in Plaintiff's interrogatory answers he wrote that September 16, 2004, was "the first time [Plaintiff] said anything to the service manager about the accident . . . ." Plaintiff's Answers to Defendants' Initial Interrogatories (Exh. 10 to Edwards Dep.) ¶ 10, which is inconsistent with Plaintiff's testimony on page 165 of his deposition that he reported the accident but not the injury on September 15, 2004. Similarly, in Plaintiff's comments on his September 24, 2004, write-up—only eight to nine days after the events in question—he wrote that he "did not say anything on Wednesday when it happened . . . ." Plaintiff's comments on Sept. 24, 2004, write-up (Exh. 13 to Edwards Dep.).

On September 27, 2004, shortly after the events in question and the first time in the record that Plaintiff explicitly wrote or testified regarding when he did report the accident, Plaintiff provided a third possible date when he first reported the accident: Monday, September 20, 2004. *See* Plaintiff's September 27, 2004, letter to EEOC Investigator Laura Stubblefield (part of Exh. 18 to Edwards Dep., at 1 ("I did not tell Robert Oulette about the accident until Monday, September 20th, 2004.")).

In Plaintiff's next letter in record to Stubblefield—dated December 3, 2004—Plaintiff disputed Defendants' representation that he did not tell Oulette about that accident until September 20, 2004 (*i.e.*, the date Plaintiff had cited in his September 27 letter), but contended instead that Oulette knew about the accident on September 16, 2004, one day after the accident. *See* Plaintiff's September 27, 2004, letter to EEOC Investigator Laura Stubblefield (part of Exh. 18 to Edwards Dep.), at 1 ¶ 3 ("R[espondent] stated I went in on September 20, 2004 to tell Bob what had happened and where I had been since leaving work on September 15, 2004. That statement is false. Bob knew on Thursday morning September 16, 2004 that I thought that I had pulled a muscle in my arm . . . .").

he should not have been required to comply with company policy. *See, e.g.,* Edwards Dep., at 155–56, 161–67; Edwards Apr. 25, 2006, Aff. ¶¶ 18–19; Niles Aff. ¶ 14. Plaintiff also recognized that the policy existed and that by its terms, it required him to *immediately* report *any* accident, regardless of whether he suffered an injury.[20] *See* Edwards Dep., at 126–27, 155, 184. In fact, even *immediately* after the accident Plaintiff knew not only that he had been involved in an accident, but that he had suffered an injury as a result of that accident, so that even if he believed he only had to report accidents which involved injuries, he would have been required to report his accident. *See, e.g.,* Edwards Dep., at 155 (testifying that his shoulder bothered him and he "felt like [he] pulled a muscle ... [r]ight when it happened"); Plaintiff's Sept. 27, 2004 letter to EEOC Investigator Laura Stubblefield (Exh. 4 to Edwards Dep.), at 1 (conceding that he "felt a little pull inside [his] left shoulder an a little stiffness"). At various times, Plaintiff—perhaps contradicting himself—attempted to explain his failure to timely report the accident as due to the fact that he believed he did not have to report an accident unless he were bleeding, *see* Edwards Dep., at 156; that his "arm did not hurt very much when the accident happened ....," *see* Plaintiff's comments on Sept. 24, 2004, write-up (Exh. 13 to Edwards Dep.) or that "it did not seem serious at the time and [there] was hardly any pain to speak of ...," Plaintiff's Sept. 27, 2004 letter to EEOC Investigator Laura Stubblefield (Exh. 4 to Edwards Dep.), at 1; or that Plaintiff should not have to report every time he "get[s] any cut or abras[]ion ...," *id.* Once again, even if Plaintiff disagrees with Defendants' policy and could demonstrate that the policy constituted a poor business practice, that would not satisfy his burden to prove that the policy was discriminatory on its face or as applied to Plaintiff.[21] *See, e.g., Cooley v. Great So. Wood Preserving,* 138 Fed.Appx. 149, 157, 159 (11th Cir. 2005); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997) (*en banc*).

When confronted with the discrepancy between Plaintiff's representations regarding the September 16 date and the September 20 date (as well as Plaintiff's explicit references to "Thursday" and "Monday" in describing those dates), Plaintiff testified that his reference to the September 20 date was a typographical error. *See* Edwards Dep., at 253–56. When Defendants' counsel confronted Plaintiff with another inconsistency between another interrogatory answer and Plaintiff's deposition testimony, Plaintiff again testified that that interrogatory answer contained a typographical error. *See* Edwards Dep., at 271–73, 275–76. Although the Court will not consider Plaintiff's credibility in order to resolve Defendants' Motion for Summary Judgment, those inconsistencies and Plaintiff's explanations for the inconsistencies would certainly be relevant to Plaintiff's credibility if this action proceeded to trial.

**20.** In fact, Plaintiff understood that the requirement to report the accident immediately or "ASAP" meant that he had to report the accident "right now, as soon as possible." Edwards Dep., at 165.

**21.** This action actually demonstrates precisely why Defendants' policy regarding the immediate reporting of *all* accidents, regardless of whether they involve injury and regardless of the severity of any injury, *is* a sound business policy. On the date of the accident, Plaintiff drastically underestimated the severity of his injury. If Defendants allowed employees to exercise discretion in deciding whether to report accidents, Defendants could be faced with numerous situations—such as Plaintiff's—when employees failed to report an accident but later learned that their injuries were much more serious than first predicted, which in turn could affect, *inter alia,* Defendants' insurance obligations, Defendants' ability to timely correct safety problems, and even Defendants' ability to correctly anticipate its needs for substitute and/or additional employees to fill in for or to replace injured employees.

Finally, Plaintiff concedes that the only allegedly adverse employment taken against him as a result of failing to timely report the accident was that a warning notice was placed in his file but that no other action was taken against him as a result of that failure. *See* Edwards Dep., at 161–63, 183–84. Title VII and § 1981 protect against actions taken "with respect to his compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e–2(a)(1); *Cooley v. Great So. Wood Preserving*, 138 Fed.Appx. 149, 156 (11th Cir.2005), and Defendants' action of placing a warning notice in Plaintiff's file did not, standing alone, affect the compensation, terms, conditions, or privileges of Plaintiff's employment, *see, e.g., Embry v. Callahan Eye Found. Hosp.*, 147 Fed. Appx. 819, 828–29 (11th Cir.2005); *Cooley*, 138 Fed.Appx. at 158; *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1240–41 (11th Cir.2001).

In Plaintiff's Response to Defendant's Motion for Summary Judgment and his accompanying April 25, 2006, and May 5, 2006, affidavits, he raises for the first time several additional potential bases for Count II. He did not mention those bases in the Complaint and has not requested leave to amend the Complaint to assert them.

Because Plaintiff failed to move to amend the Complaint to include those bases for Count II and because he first raised them in response to Defendants' Motion for Summary Judgment, Plaintiff is not entitled to assert those bases (which are, in effect new claims) in support of Count II. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004); *see also, e.g., Mahgoub v. Miami Dade Community Coll.*, No. 05–11520, 2006 WL 952278, at *2 (11th Cir. Apr.13, 2006) (Affirming summary judgment in defendant's favor as to Title VII retaliation claim, when a retaliation claim was raised in complaint but specific theory supporting retaliation claim at issue was not raised until response to summary judgment motion because, in part, plaintiff had not sought to supplement complaint to add new claim and, based on *Gilmour*, a "plaintiff may not supplement complaint through argument in brief opposing summary judgment, but must comply with requirements of Fed.R.Civ.P. 15(a)."); *id.*, 2006 WL 952278, at *2 ("Plaintiff also contends that material issues of fact remain about his retaliation claim: he suggests, as he did for the first time in his response to MDCC's motion for summary judgment, that MDCC's denial of a raise in June 2004 was based on a false, negative performance evaluation. The district court addressed the merits of this claim. But we doubt that this claim properly is before us."); *Price v. M & H Valve Co.*, No. 05–15205, 2006 WL 897231, at *7 n. 7 (11th Cir. Apr.7, 2006) ("However, because M & H Valve objected to Price raising this claim for the first time in his brief opposing summary judgment, this claim was due to be dismissed ...."); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir.2006) ("Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, Hurlbert was not entitled to raise it in the midst of summary judgment."); *Al–Amin v. Donald*, 165 Fed.Appx. 733, 740 (11th Cir.2006) ("A defendant is not required to 'infer all possible claims that could arise out of the facts set forth in the complaint.' ... 'A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.' ") (quoting, 382 F.3d at 1315); *McGoy v. Ray*, 164 Fed.Appx. 876, 879 n. 2 (11th Cir.2006) ("Furthermore, McGoy could not amend his complaint by adding his VOITIS claim in his brief opposing summary judgment, as he attempt-

ed to do."); *Stephens v. State Bd. of Pardons & Paroles,* No. 04–15995, 2005 WL 1635264, at *2 n. 2 (11th Cir. June 10, 2005) ("Stephens did not include a Due Process claim in his complaint, and he never moved to amend his complaint to include it. He first argued Due Process in the district court in response to the defendants' motion for summary judgment. That is insufficient."); *McShane v. United States Att'y Gen.,* 144 Fed.Appx. 779, 788–89 (11th Cir.2005); *Cooley v. Great So. Wood Preserving,* 138 Fed.Appx. 149, 153 (11th Cir.2005); *Tucker v. Union of Needletrades, Industrial and Textile Employees,* 407 F.3d 784, 788 (6th Cir.2005) ("To permit a plaintiff to do otherwise would subject defendants to unfair surprise."); *Green Country Food Market, Inc. v. Bottling Group, LLC,* 371 F.3d 1275, 1279 (10th Cir.2004) (cited with approval in *Gilmour,* 382 F.3d at 1315) (Affirming summary judgment for defendant on claim which plaintiff first raised in opposition to summary judgment and holding: "A plaintiff should not be prevented from pursuing a claim simply because of a failure to set forth in the complaint a theory on which the plaintiff could recover, provided that a late shift in the thrust of the case will not prejudice the other party in maintaining its defense.... The liberalized pleading rules, however, do not permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case.... This practice, if tolerated, 'would waste the parties' resources, as well as judicial resources, on discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances.' ") (quoting *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1090–91 (10th Cir.1991)); *Chavis v. Clayton County Sch. Dist.,* 300 F.3d 1288, 1291 n. 4 (11th Cir.2002) ("Chavis advanced this contention in his brief to the district court in response to the defendants' motion for summary judgment. Chavis did not seek to amend his complaint to add a claim based on the asserted conduct, and the district court did not specifically address this contention.... We do not regard this kind of claim as properly before us ...."); *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir.1996) (cited with approval in *Gilmour,* 382 F.3d at 1315) ("As a final matter, Shanahan's attempt to amend his complaint by way of a footnote in his response to defendants' motion for summary judgment was properly denied by the district court. A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *Fisher v. Metro. Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir.1990) (cited with approval in *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir.2004)) ("As the district court correctly noted, this claim was not raised in Fisher's second amended complaint but, rather, was raised in his response to the defendants' motions for summary judgment and, as such, was not properly before the court."); *Gaffney v. Corwine,* No. 1:04CV21–SPM/AK, 2005 WL 1684436 (N.D.Fla. May 16, 2005) (Report and Recommendation), *adopted by district court,* 2005 WL 1684421 (N.D.Fla. June 29, 2005); *Smith–Johnson v. Thrivent Fin. for Lutherans,* No. 803CV2551T30EAJ, 2005 WL 1705471, at *6 n. 8 (M.D.Fla. July 20, 2005); *cf., e.g.,* also *Steger v. General Elec. Co.,* 318 F.3d 1066, 1077 & n. 11 (11th Cir.2003) (explaining that, although issues not raised in the pleadings may be treated as if they were properly raised when they either are "tried by express or implied consent of the parties," or "are included in a pretrial order," these exceptions are not applicable if an opposing party objects to the assertion of such a claim without the filing of a supplemental pleading).

Even if Plaintiff had requested leave pursuant to Federal Rule of Civil Procedure 15(a) to amend Count II to include those theories of discrimination, the undersigned would recommend that the Court deny that request because, for many of the same reasons discussed *supra* in relation to Plaintiff's request to amend the Complaint to include a claim for unpaid minimum wages, Plaintiff proposed those new theories in support of Count II after undue delay and Defendants would be prejudiced by those amendments at this late date, *i.e.* after the close of discovery, after expiration of the pre-trial motions filing deadline, and only weeks before trial.

Additionally, several if not all of Plaintiff's new theories either are futile or, at a minimum, are based on such contradictory and/or inconsistent evidence that it would be unfair to require Defendant to defend against them at this late date. For example, Plaintiff alleges that Defendants failed to pay him $300 due under the Technician Pay Plan, but paid all white and Hispanic employees their wages due under that plan. *See* D.E. # 48, at 2. As discussed *supra* in relation to Plaintiff's request to amend to add a claim for $300 in unpaid minimum wages, this proposed claim either is futile or is based on contradictory and/or inconsistent evidence.

Second, Plaintiff alleges that Defendants promised him a $5–to–$6 hourly raise if he completed training courses. *See* D.E. # 48, at 2–3. As Defendants set forth in their Reply memorandum, Plaintiff has provided apparently contradictory evidence regarding that assertion, and at least some of his testimony conflicts with other record evidence. *See* D.E. # 49, at 8. Additionally, even if Defendants promised Plaintiff that pay raise and failed to give it to him, Plaintiff has not identified any similarly-situated white employee who was promised such a pay raise and re-

ceived the raise. Thus, even if Defendants engaged in improper conduct by promising but failing to give Plaintiff a raise, Plaintiff has not presented evidence from which a reasonable factfinder could concluded that Defendants acted with a racially-discriminatory motive in doing so. As discussed *supra*, similar rationale applies to Plaintiff's allegations regarding the $1.50 raise which he claims he was promised but did not receive. *See* D.E. # 48, at 3.

Third, Plaintiff alleges that Defendants failed to give him certain tools which he requested, and that that failure led to his accident. *See* D.E. # 48, at 3–4; Plaintiff's May 5, 2006, Aff. ¶¶ 11–12. In Plaintiff's second affidavit, he stated: "To my knowledge, all white employees were supplied with the safety equipment they needed." Plaintiff's May 5, 2006, Aff. ¶¶ 12. That conclusory statement is insufficient to satisfy Plaintiff's burden as part of his *prima facie* case to specifically identify a similarly-situated white employee whom Defendants gave tools. Plaintiff has not specifically identified any white employee who requested and was given tools, let alone presented evidence that such an employee was similarly situated to Plaintiff, *e.g.*, that the requests were made in substantially similar circumstances. *See, e.g., Embry v. Callahan Eye Found. Hosp.*, 147 Fed. Appx. 819, 827–29 (11th Cir.2005); *Cooley v. Great So. Wood Preserving*, 138 Fed. Appx. 149, 157 (11th Cir.2005); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087, 1091 (11th Cir.2004); *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir.2003); *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001).

It therefore is recommended that the Court grant Defendant's Motion for Summary Judgment as to Plaintiff's disparate treatment claims contained in Count II.

*Retaliation*

■ In Plaintiff's Complaint, he contends that in violation of Title VII and 42 U.S.C. § 1981, Defendants retaliated against Plaintiff for filing his first EEOC charge when they gave him a written warning for failing to report the September 15, 2004, accident. *See* Compl. ¶ 15. Defendants move for summary judgment as to that portion of Count II.

In Plaintiff's Response to Defendants' Motion for Summary Judgment, he did not address that claim or Defendants' arguments regarding that claim, and the Court therefore concludes that Plaintiff has abandoned that claim. *See, e.g., Iraola & CIA, S.A. v. Kimberly–Clark Corp.,* 325 F.3d 1274, 1284–85 & n. 6 (11th Cir.2003); *Road Sprinkler Fitters Local U. No. 669 v. Ind. Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir.1994).

Even assuming Plaintiff had not abandoned that portion of Count II, Defendants would be entitled to summary judgment regarding it. As a preliminary matter, in the Eleventh Circuit it is unsettled whether the elements of a Title VII retaliation claim are identical to the elements of a § 1981 retaliation claim. *See, e.g., Tucker v. Talladega City Sch.,* No. 05–11562, 2006 WL 688967, at *4, *6 (11th Cir. Mar.20, 2006); *Bass v. Bd. of County Comm'rs,* 256 F.3d 1095, 1120 n. 10 (11th Cir.2001); *Andrews v. Lakeshore Rehab. Hosp.,* 140 F.3d 1405, 1412–13 (11th Cir.1998). Plaintiff, however, has not disputed Defendants' assertion that for purposes of this action, the elements of Title VII and § 1981 retaliation claims are identical. For purposes of this Report and Recommendation, therefore, the Court will analyze Plaintiff's Title VII and § 1981 retaliation claims "using the analytical framework for a Title VII retaliation claim." *Tucker v. Talladega City Sch.,* 2006 WL 688967, at *6.

Plaintiff must first establish a *prima facie* case of retaliation by showing that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action, and (3) the adverse action was causally related to his protected expression. *See, e.g., Tucker v. Talladega City Sch.,* No. 05–11562, 2006 WL 688967, at *6 (11th Cir. Mar.20, 2006); *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1454 (11th Cir.1998). If Plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to Defendant to produce one or more legitimate reasons for the adverse employment action. *See, e.g., Tucker,* 2006 WL 688967, at *6; *Johnson v. Booker T. Washington Broadcasting Serv.,* 234 F.3d 501, 507 n. 6 (11th Cir. 2000). If Defendants proffer legitimate reasons, then Plaintiff has the ultimate burden to demonstrate that those reasons were pretext for retaliation. *See, e.g., Tucker,* 2006 WL 688967, at *6; *Johnson,* 234 F.3d at 507 n. 6.

Plaintiff has not presented evidence sufficient to establish two of the three elements of his *prima facie* case. As discussed *supra,* Plaintiff concedes that the only allegedly adverse employment action taken against him because of his failure to timely report the accident was that Defendants placed a warning notice in his employment file. *See* Edwards Dep., at 161–6, 183–84. Defendants' action of placing a warning notice in Plaintiff's file was not, standing alone, an "adverse employment action" which affected the compensation, terms, conditions, or privileges of Plaintiff's employment, *see, e.g., Embry v. Callahan Eye Found. Hosp.,* 147 Fed.Appx. 819, 828–29 (11th Cir.2005); *Cooley,* 138 Fed.Appx. at 158; *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1240–41 (11th Cir.2001). Additionally, the only record evidence regarding Defendants' basis for giving Plaintiff the warning letter belies any connection to Plaintiff's filing of his

first EEOC charge.[22] As discussed *supra,* contrary to Plaintiff's allegation in the Complaint, Plaintiff admittedly failed to report the accident immediately in accordance with Defendants' company policy, but instead reported it at least one day later. *See, e.g.,* Edwards Dep., at 155–56, 161–67; Edwards Apr. 25, 2006, Aff. ¶¶ 18–19; Niles Aff. ¶ 14. The undisputed evidence establishes that Plaintiff received the warning letter because he failed to comply with Defendants' policy regarding timely reporting of accidents, not because Plaintiff filed an EEOC charge. Once again, even if Plaintiff disagrees with Defendants' policy and could demonstrate that the policy constituted a poor business practice, those facts would not satisfy his burden to prove that the policy was racially discriminatory on its face or as applied to him. *See, e.g., Cooley v. Great So. Wood Preserving,* 138 Fed.Appx. 149, 157, 159 (11th Cir.2005); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997) (*en banc* ).

It therefore is recommended that the Court grant Defendants' Motion for Summary Judgment as to Count II in its entirety.

### Count III

■ In Count III, Plaintiff claims that Defendants fired him in retaliation for filing a workers' compensation claim, in violation of Florida Statute § 440.205. *See* Compl. ¶ 29. That statute provides: "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." Fla. Stat. § 440.205. That statute

> only prohibits the retaliatory discharge of an employee "by reason of" the filing of a workers' compensation claim. The statute cannot be interpreted to prohibit the discharge of an employee for any reason once the employee has filed or pursued a workers' compensation claim. Employers still retain their traditional right to terminate employees for legitimate business reasons, such as unsatisfactory job performance or excessive absenteeism.

*Pericich v. Climatrol, Inc.,* 523 So.2d 684, 685 (Fla. 3d DCA 1988).

Similar to a Title VII claim, Plaintiff must first establish a *prima facie* case of § 440.205 retaliation by demonstrating: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal connection between the protected expression and the adverse action. *See Russell v. KSL Hotel Corp.,* 887 So.2d 372, 379 (Fla. 3d DCA 2004). "In order to satisfy the 'causal connection' prong of a *prima facie* retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Id.* Additionally, "while awareness of protected expression may be premised upon circumstantial evidence, the plaintiff must show a defendant's awareness with more evidence than mere curious timing coupled with speculative possibilities." *Id.*

Once a plaintiff establishes a *prima facie* case by proving only that the

---

**22.** This is particularly true in light of the fact that approximately three months—from June 29, 2004, until September 24, 2004—passed between Plaintiff's filing of the EEOC charge and Defendants' issuance of the warning letter. *Higdon v. Jackson,* 393 F.3d 1211, 1220– 21 (11th Cir.2004) (Holding that a three-month period between the protected activity and the adverse employment action, in the absence of other evidence of causation, was insufficient to establishing a *prima facie* case of Title VII retaliation).

protected activity and the negative employment action are not completely unrelated, the burden then shifts to the defendant to proffer a legitimate reason for the adverse employment action. The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the "legitimate reason" was merely a pretext for the prohibited, retaliatory conduct.

*Russell,* 887 So.2d at 379–80.

Although awareness of the protected activity at the time a defendant took adverse employment action is *necessary* to establish the "causal connection" element of a plaintiff's *prima facie* case, such awareness is not always *sufficient* to establish such a connection. Notably, the Third District Court of Appeal explicitly wrote that a plaintiff must establish that fact *"at a minimum ...."* *Russell,* 887 So.2d at 379. Additionally, in setting forth that "causal connection" standard (as well as other standards related to the *prima facie* case and to the entire § 440.205 cause of action), the Third District Court of Appeal exclusively relied on and quoted numerous Eleventh Circuit decisions regarding Title VII and related federal-law retaliation claims, which strongly suggests that the same standards for establishing a causal connection for purposes of a Title VII retaliation claim apply to a § 440.205 claim. *See Russell,* 887 So.2d at 379 (citing *Sierminski v. Transouth Fin. Corp.,* 216 F.3d 945, 950 (11th Cir.2000); *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000); *Farley v. Nationwide Mut. Ins.,* 197 F.3d 1322, 1336 (11th Cir.1999); *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1196–97 (11th Cir.1997); *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 918 (11th Cir.1993); and *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993)).

Pursuant to that standard, proof of an employer's knowledge of the protected activity at the time the employer took the adverse employment action is not always sufficient to establish the requisite causal connection for purposes of proving a *prima facie* case. For example, if the time period between the protected activity and the adverse employment action is sufficiently long and the employee presents no evidence of causation other than the employer's knowledge of the protected activity at the time of the adverse employment action, the employee has not proven the causation element of his or her *prima facie* case. *See, e.g., Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close,' ...."); *Embry v. Callahan Eye Found. Hosp.,* 147 Fed.Appx. 819, 830–31 (11th Cir.2005); *Higdon v. Jackson,* 393 F.3d 1211, 1220–21 (11th Cir.2004); *Wascura v. S. Miami,* 257 F.3d 1238, 1248 (11th Cir.2001) ("In light of the other evidence in the record, the three and one-half month temporal proximity is insufficient to create a jury issue on causation.").

Plaintiff has established the first two elements of his *prima facie* case: he engaged in statutorily protected expression, *i.e.* filing his workers' compensation claim; and he suffered an adverse employment action, *i.e.* Defendants terminated his employment. Regarding the third element of Plaintiff's *prima facie* case—a causal connection between filing the worker's compensation claim and the termination of Plaintiff's employment—it appears to be undisputed that Defendants were aware of Plaintiff's worker's compensation claim at the time they terminated Plaintiff's em-

ployment. Nevertheless, as discussed *infra*, the Court concludes that Plaintiff has failed to establish a causal connection, and therefore a *prima facie* case, pursuant to Florida Statute § 440.205.

Assuming for a moment, however, that Plaintiff had established a *prima facie* case, the burden would shift to Defendants "to proffer a legitimate reason for the adverse employment action." *Russell*, 887 So.2d at 379–80. Defendant has proffered at least two legitimate, non-retaliatory reasons for terminating Plaintiff's employment. First, Defendants claim that they fired Plaintiff because he was unable to work. *See* D.E. # 42, at 13 ("Plaintiff was discharged because he could not work, a legitimate reason to discharge an employee under Florida law."). Second, Defendants claim that they fired Plaintiff because Defendants' employee manual provides for firing an employee who has been absent from work due to a medical condition for more than twelve weeks or ninety days per year. *See* D.E. # 42, at 13. Without question, these are legitimate reasons to fire an employee, and Plaintiff therefore would have "[t]he burden . . . to prove by a preponderance of the evidence that the 'legitimate reason' was merely a pretext for the prohibited, retaliatory conduct." *Russell*, 887 So.2d at 379–80.

"In order for a reason to be proven to be a 'pretext for [prohibited, retaliatory conduct]' it must be shown *both* that the reason articulated was false, *and* that discrimination was the real reason for the discharge." *Gray v. Russell Corp.*, 681 So.2d 310, 312 n. 1 (Fla. 1st DCA 1996). Additionally, in order to demonstrate pretext, a plaintiff may not merely disprove *one* of the employer's proffered legitimate reasons but instead must "produce sufficient evidence for a reasonable factfinder to conclude that *each of* the employer's

proffered . . . reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir.2000) (*en banc*) (emphasis added); *see also, e.g., Embry v. Callahan Eye Found. Hosp.*, 147 Fed.Appx. 819, 821 n. 1 (11th Cir.2005); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) (*en banc*) (requiring a plaintiff to rebut "all of the defendant's proffered non-discriminatory reasons for its actions" to avoid judgment as a matter of law).

■ Much of the same discussion *infra* regarding evidence which demonstrates that Plaintiff cannot prove the "causal connection" element of his *prima facie* case also demonstrates that Plaintiff has not presented evidence from which a reasonable factfinder could find that either of Defendants' proffered reasons for firing Plaintiff was pretext for Defendants' alleged retaliatory motive, *i.e.* firing Plaintiff because he filed a workers' compensation claim; and many of the reasons why the evidence does not demonstrate pretext are also relevant to demonstrate that Plaintiff cannot prove the "causal connection" element of his *prima facie* case. The Court therefore will analyze in the same discussion both of those defects in Plaintiff's *prima facie* case.

The undisputed evidence establishes not only that Plaintiff was unable to work from two days after the accident—September 17, 2004—until he was fired approximately three months later, but also that there was no reasonable possibility that he would be able to return to work in the near future, *i.e.* anytime close to ninety days after he became unable to work because of the accident. In fact, Plaintiff still would have been unable to return to work for Defendants on the date of his deposition, December 21, 2005, more than *one year* after he was fired and more than *fifteen months* after his accident. *See* Edwards Dep., at 8–9, 12, 245–46. Additionally, it is undis-

puted that when Defendant Jack Niles fired Plaintiff, he informed Plaintiff that "he needed to fill the position." Edwards Dep., at 129; *see also id.* at 187–88, 219–20. Without question, firing an employee because the employee has been unable to work for approximately three months constitutes a legitimate business decision, *see, e.g., Pericich v. Climatrol, Inc.,* 523 So.2d 684, 685 (Fla. 3d DCA 1988), and this is particularly true when there is no realistic possibility that the employee will soon be able to return to his or her job.

Plaintiff contends that he was terminated on December 10, 2004, not December 18, 2004, which was fewer than ninety days after September 16, 2004. According to Plaintiff, therefore, Defendant's termination of his employment was no in accordance with the written policy upon which Defendants rely in support of their second proffered legitimate reason for firing Plaintiff. Plaintiff contends that Defendants terminated him on that date in order to avoid paying him the Christmas bonus due employees who were still employed on December 15, 2004, pursuant to the Technician Pay Plan. *See* D.E. # 48, at 6 (Arguing that the alleged December 10, 2004, termination was "calculated to cut off the requirement to pay wages amounting to $300.00 due to the Plaintiff as of December 15, 2004.").

As discussed *supra* in a footnote in the "Background" section of this Report and Recommendation, Plaintiff has not directed the Court to any *evidence* supporting that assertion, and in fact the uncontroverted evidence—most notably Plaintiff's own testimony both in his deposition and in his recent affidavits [23]—demonstrates

that Plaintiff was fired on December 18, 2004, not on December 10, 2004. *See* Edwards Dep., at 8 ("The last day I was employed was December 18, 2004."); *id.* at 127–29; Edwards's May 5, 2006, Aff. ¶ 14 ("I was terminated on or about December 18, 2005."); Edwards Apr. 25, 2006, Aff. ¶ 20 ("As of December 18, the date of my termination"); *see also* Compl. ¶ 7 ("From October 15, 2001 through December 18, 2004, Plaintiff was employed by Defendants."); Plaintiff's December 20, 2004, EEOC charge (Exh. 16 to Plaintiffs' Deposition) (listing December 18, 2004, as "date(s) discrimination took place" and stating, "On or about December 18, 2004, my employment was terminated."). There is no record evidence that Plaintiff has ever testified to the contrary.

Also as discussed *supra,* although one of counsel's questions at Plaintiff's deposition suggested that one document lists Plaintiff's separation date as December 10, 2004, not December 18, 2004,[24] a lawyer's question does not constitute evidence which may be used to defeat summary judgment. *See, e.g., Cargill v. Turpin,* 120 F.3d 1366, 1385 (11th Cir.1997) (Holding that prosecutor's improper comments did not render criminal sentencing proceeding fundamentally unfair because, *inter alia,* "the [state trial] court clearly instructed the jury that lawyers' comments did not comprise evidence."); *United States v. Brown,* 546 F.2d 166, 174 (5th Cir.1977); *Broadway v. City of Montgomery, Ala.,* 530 F.2d 657, 661 (5th Cir.1976) ("Evidence inadmissible at trial cannot be used to avoid summary judgment."); *Lopez v. Ingram Micro, Inc.,* No. 95–2004–Civ–

---

**23.** Plaintiff actually submitted those affidavits in support of his Response to Defendants' Motion for Summary Judgment, the same response in which he claims that he was fired on December 10, not December 18.

**24.** Plaintiff has not supplied the Court with a copy of that document and has not directed the Court to its location anywhere in the record, and the Court cannot find it in the record.

Nesbitt, 1997 WL 401585, at *7 (S.D.Fla. Mar.18, 1997) (J. Nesbitt) (holding that a plaintiff may not rely on evidence which would be inadmissible at trial to defeat summary judgment).

More importantly, when Plaintiff was asked about the date on that document, he affirmatively testified that that date was inaccurate and that he was fired on December 18, 2004, not December 10, 2004, *see* Edwards Dep., at 128 (Q: "Is that an inaccurate date?" A: "Yes, it is."), and he repeated that December 18, 2004, date in his two recent affidavits, despite his awareness that he was asked about that potential discrepancy in his deposition and despite the fact that he is trying to make an issue out of that alleged discrepancy,[25] *see* Edwards May 5, 2006, Aff. ¶ 14; Edwards Apr. 25, 2006, Aff. ¶ 20.

Even if the Court accepted as true Plaintiff's assertion regarding that December 10, 2004, termination date, Plaintiff contends that Defendants fired him with that effective date *in order to avoid paying him the Christmas bonus* due to individuals working for the company on December 15, 2004. If Defendants fired Plaintiff in order to avoid paying him the Christmas bonus, then Defendants did not fire him *for filing his workers' compensation claim* and Plaintiff cannot succeed on his § 440.205 claim because that statute "only prohibits the retaliatory discharge of an employee 'by reason of' the filing of a workers' compensation claim." *Pericich v. Climatrol, Inc.*, 523 So.2d 684, 685 (Fla. 3d DCA 1988). In other words, even if Defendants fired Plaintiff for some improper motive other than because he filed a workers' compensation claim, that improper motive cannot form the basis of Plaintiff's § 440.205 claim.[26]

Additionally, even if Plaintiff had presented evidence that Defendants fired him just prior to expiration of the ninety-day period outlined in the written company policy, that would not change the fact that Defendants fired Plaintiff because he had not worked in *approximately* ninety days (regardless whether it was precisely eighty-five, ninety, or ninety-five days), or the fact that Plaintiff had no reasonable possibility of being medically cleared to work for Defendants anytime in the near future, let alone before expiration of the ninety-day period upon which Plaintiff relies so heavily. Thus, even if Defendants fired Plaintiff several days before expiration of the ninety-day period, that fact does not remotely suggest that Defendants fired Plaintiff *because he filed a workers' compensation claim.* In fact, even if the December 10 date were correct, Plaintiff still would have missed twelve consecutive weeks of work, and therefore would have come within the ambit of the relevant policy, which provided for firing an employee who missed ninety days *or twelve weeks* of work.

Although Plaintiff's arguments regarding Defendants' ninety-day policy are not entirely clear, it appears that Plaintiff argues in part that the temporal proximity between the date he filed his workers' compensation claim and the date Defendants fired him demonstrates a causal connection between those two events and may

---

**25.** Even if the Court accepted as true Plaintiff's unsupported assertion that Plaintiff's fired him on December 18, 2004, but attempted to make December 10, 2004, the effective date of his termination, that would not change the fact that he actually was fired on December 18, 2004.

**26.** As the Court discussed *supra* in relation to Plaintiff's request to amend the Complaint to include a claim for unpaid minimum wages, the undisputed evidence demonstrates that Defendants paid Plaintiff the portion of the Christmas bonus which Plaintiff was entitled to receive.

also demonstrate pretext.[27] In order to raise an inference of causation, the temporal proximity between the protected activity and the adverse action must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001); *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Standing alone, the approximately ninety-day period in this action is too long to raise a presumption of pretext. *See, e.g., Higdon*, 393 F.3d at 1220–21 (Holding that a three-month period between the protected activity and the adverse employment action, in the absence of other evidence of causation, was insufficient to establishing a *prima facie* case of Title VII retaliation); *Wascura v. S. Miami*, 257 F.3d 1238, 1248 (11th Cir.2001) ("In light of the other evidence in the record, the three and one-half month temporal proximity is insufficient to create a jury issue on causation."); *cf. Embry v. Callahan Eye Found. Hosp.*, 147 Fed.Appx. 819, 830–31 (11th Cir.2005) (concluding that two month and three day period was sufficient to show causation for purposes of *prima facie* case).

Even in light of the other evidence in this action, the approximately ninety-day period between Plaintiff's filing of his workers' compensation claim and his firing provides no evidence that he was fired in retaliation for filing the claim, is insufficient to satisfy the "causal connection" element of Plaintiff's *prima facie* case, and is insufficient to demonstrate pretext. This is particularly true in light of the facts that Plaintiff was unable to work during that approximately three-month period, the employer had a policy of firing employees who were unable to work for more than ninety days in one year (although even in the absence of that policy and/or if Defendants had fired him before expiration of the ninety-day period, Defendants were entitled to fire Plaintiff for the legitimate business reason that he was unable to work), and as of the date Defendants terminated Plaintiff's employment, there was no reasonable possibility that he would return to work in the near future. Instead, Plaintiff still would have been medically unable to return to his position more than one year after Defendants fired him.

In an apparent attempt to demonstrate pretext, Plaintiff argues that "Defendants do not terminate white employees for missing more than 90 days due to injuries from work." D.E. # 48, at 5–6. Plaintiff, however, has not directed the Court to any evidence which supports a finding of pretext based on that argument.

In support of that argument, Plaintiff relies solely on his affidavit testimony that "[b]etween April 2004 and April 2005, Wesley Brooks (Brooks), a white male, missed more than 90 days in that one year period. He had rotator cuff surgery performed in or about April 2005 and returned to work in or about June 2005. Brooks was not terminated before or after being released [by] his doctor." Edwards Apr. 25, 2006, Aff. ¶ 24; *see* D.E. # 48, at 5 n. 11 (citing affidavit testimony); *see also* Edwards Dep., at 133. According to Plaintiff, Brooks told him "that he was paid by Associated ....," the workers'

---

27. This is not a case in which Plaintiff engaged in protected activity, *continued to work* after engaging in the protected activity, and then was fired sometime later, allegedly for having engaged in the protected activity. Instead, Plaintiff *did not return to work* from the date he engaged in the protected activity (*i.e.,* filing a claim for workers' compensation benefits) until he was fired on December 18, 2004. Therefore, one of Defendants' proffered legitimate reasons—Plaintiff's inability to work—is more easily recognizable as true (even if it turns out not to have been Defendants' actual motivation) in this action than it might be in other types of retaliation claims.

compensation carrier, "for any hours he missed up to 40 per week. This can be verified through Associated." *Id.*

As a preliminary matter, Plaintiff has not met his burden because he has not presented more than a scintilla of even *inadmissible* evidence—let alone any *admissible* evidence—to support his assertion that Brooks missed more than ninety days of work in any year. Plaintiff's testimony is based on inadmissible hearsay, is speculative, and is inconsistent with his deposition testimony (and Plaintiff has not even acknowledged, let alone explained, the inconsistencies).

First, Plaintiff offered inconsistent testimony in his deposition and one of his affidavits regarding the dates when Brooks missed work. In Plaintiff's deposition, he testified that Brooks had surgery in "approximately March of 2005" and "returned to work probably between May and June of 2005 ...." Edwards Dep., at 133. In Plaintiff's affidavit, however, he testified that Brooks had surgery "in or about April of 2005 and returned to work in or about June 2005." Edwards Apr. 25, 2006, Aff. ¶ 24; *see also* Plaintiff's Answers to Defendants' Initial Interrogatories (Exh. 10 to Edwards Dep.) ¶ 10 (stating that Brooks "was out of work under doctor's orders in April through June of 2005"). Plaintiff has not attempted to explain that discrepancy, and although that discrepancy may seem trivial on its face, for the reasons discussed *infra* it is not.

That discrepancy may be the result of a second problem with Plaintiff's testimony regarding Brooks: Plaintiff only testified to *approximate months* when Brooks had surgery and returned to work, not even the approximate *dates* of those events, let alone the *exact* dates of those events. *See also, e.g.,* Edwards Dep., at 137 (Q: "So I'm going to repeat my question. Do you know how long Mr. Brooks was out of work?" A: "Only approximately."); *cf. also id.* at 133 ("I don't know *exactly* when he was injured") (emphasis added). Evidence regarding not only the exact months, but also the exact dates, when those events occurred is crucial to Plaintiff's argument because he is asserting that Brooks was out of work for more than ninety days, and his testimony—the only evidence he relied on to support that assertion—must support that conclusion. Even accepting Plaintiff's affidavit testimony as true, however, and even assuming that Plaintiff had identified April and June as the *exact* months, as opposed to the *approximate* months, when Brooks underwent surgery and when Brooks returned to work, Plaintiff has not demonstrated that Brooks was out of work for more than ninety days. At most, even making those assumptions and ignoring the inconsistencies between Plaintiff's deposition testimony and his affidavit testimony, Plaintiff has raised only a slight possibility that Brooks was out of work more than ninety days.

Specifically, Plaintiff has not presented any evidence that Brooks missed work prior to Brooks's surgery, and, considering Plaintiff's affidavit testimony in even a more favorable light than that to which Plaintiff is entitled, assuming Brooks had surgery on April 1, 2005 (*i.e.,* the first day of the month to which Plaintiff testified) and did not return to work until June 30, 2005 (*i.e.,* the last day of the month to which Plaintiff testified), then there were *exactly* ninety days during that period when Brooks was unavailable to work. If Brooks had surgery even one day later, *i.e.,* April 2, 2005, or returned to work even one day earlier, *i.e.,* June 29, 2005, then Brooks was unavailable to work for fewer than ninety days. Because Plaintiff was unable to identify even the precise *months* when Brooks had his surgery and returned to work, relying on his affidavit testimony

to establish that Brooks had surgery on that exact date in April (*i.e.,* April 1) and that he returned to work on that exact date in June (*i.e.,* June 30) requires an impermissible exercise in speculation. Plaintiff's testimony reveals no non-speculative, permissible basis for his self-serving conclusion that Brooks "missed more than 90 days in that one year period . . . ." Edwards Apr. 25, 2006, Aff. ¶ 24.

Additionally, Plaintiff's affidavit fails to clarify the basis for Plaintiff's knowledge— as imprecise as that knowledge is—regarding the period Brooks allegedly was absent from work. Plaintiff's deposition testimony, however, reveals that Plaintiff's testimony, even if it were more precise, is based solely on inadmissible hearsay and/or Plaintiff's impermissible speculation. When Defendants' counsel asked Plaintiff where he was "getting these dates from . . .," Edwards Dep., at 133—and again, those deposition dates were not quite the same dates to which Plaintiff testified in his affidavit—Plaintiff testified that his knowledge regarding the dates Brooks missed work was based on "the dates [Plaintiff] s[aw] him in the doctor's office." Edwards Dep., at 133. Standing alone, that statement would have raised three possibilities: (1) Plaintiff saw Brooks at the doctor's office *every* day during that ninety-day period and they were both at that office during *all* hours when Brooks could have been working (the record does not support such an inference); (2) Plaintiff saw Brooks at the doctor's office on certain dates (or even during specific hours during all dates) during that period and speculated that Brooks therefore was not able to work during that entire period, (which would constitute impermissible

speculation); or (3) Brooks told Plaintiff that he was unable to work during those periods (which would mean Plaintiff's conclusions were based on Brooks's hearsay testimony). In any of those situations, Plaintiff's conclusions are based on impermissible speculation or inadmissible hearsay, and therefore the Court may not consider those conclusions in opposition to Defendants' Motion for Summary Judgment.[28]

Later in Plaintiff's deposition, Plaintiff clarified that his conclusion was based either completely on hearsay or on a combination of hearsay and impermissible speculation. Plaintiff testified:

Q: Do you know if Mr. Brooks was out of work for three months or more?

A: From what he told me, yes.

Q: Tell me what Mr. Brooks told you.

A: He told me—he told me he was having his surgery when I started seeing him in the doctor's office. And we were at physical therapy almost every day and he told me that approximately when he was going back to work.

Q: Do you know when he did go back to work?

A: I don't know the exact date, no.

Q: So I'm going to repeat my question. Do you know how long Mr. Brooks was out of work?

A: Only approximately.

Q: And only approximately, based on what he told you in physical therapy?

A: Yeah.

---

28. Plaintiff's statements that Brooks told him "that he was paid by Associated . . . .," the workers' compensation carrier, "for any hours he missed up to 40 per week" and that "[t]his can be verified through Associated

. . .," Edwards Apr. 25, 2006, Aff. ¶ 24, also are based on inadmissible hearsay, although the relevance of those statement to any of Plaintiff's arguments is unclear.

Q: Do you have independent knowledge, not from what he told you?

A: No.

Edwards Dep., at 136–37.

Even assuming that Brooks had been absent more than ninety days, based on the specific facts of this action Plaintiff still would not have demonstrated pretext because Brooks and Plaintiff were not similarly situated. Specifically, the evidence on which Plaintiff relies implies that there was a reasonable probability that Brooks would be able to return to work very soon after, if not before, expiration of that ninety-day period (as the fact that he did return to work either before or at most a day after expiration of that period strongly implies); while there was no similar reasonable probability that Plaintiff would be able to return to work very soon after expiration of the ninety-day period (as the fact that he was unable to return to his position more than fifteen months after the accident, and more than one year after he was fired, strongly implies). In light of that distinction and the fact that Plaintiff has not submitted any other evidence that Defendants' termination of Plaintiff's employment was based on the fact that he filed a workers' compensation claim, any differences in treatment of Brooks from treatment of Plaintiff would not demonstrate pretext. *Cf., e.g., Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1091 (11th Cir.2004) ("The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.").

Plaintiff makes one further argument, whose relevance is not completely clear, in support of pretext. Plaintiff wrote: "Prior to Plaintiff's injury, Defendants were short three mechanics not counting the absence of Mr. Brooks. Other than retaliation, any other reason for termination of the Plaintiff is evidence of pretext." D.E. # 48, at 5.

In support of that argument, Plaintiff cites the following statement from his affidavit: "At the time of my termination, Niles was already short three (3) mechanics and Brooks was missing work days almost every week." Edwards Apr. 25, 2006, Aff. ¶ 26.

Although Plaintiff's affidavit sheds little light on the relevance of that argument, a portion of Plaintiff's deposition testimony—which Plaintiff failed to cite in the relevant portion of his Response to Defendants' Motion for Summary Judgment—does illuminate to some degree Plaintiff's contention and his assertion regarding its relevance:

Q: Is it your position that he let you go for a reason different than needing to fill the position?

A: Yes.

Q: And why? Tell me what your position is and why?

A: Because when I got hurt, he was already short three mechanics.

Q: And tell me why that—I don't understand your point.

. . .

Well, tell me why you believe the fact that when you got hurt, the defendant already being short three mechanics somehow translates to he didn't need to fill your position after three months.

. . .

A: Because he's been needing three mechanics for over a year.

Q: Did you make the fourth?

A: The fourth one missing, yeah.

Edwards Dep., at 130–31.

In essence, therefore, it appears Plaintiff argues that if Defendants truly had needed to fill a position, Defendants could have filled any of the three already-open positions without firing Plaintiff. There-

fore, according to Plaintiff, Defendants' proffered reason that they needed to fill *Plaintiff's* position cannot be true because they could have filled other open positions first.

As a preliminary matter, Plaintiff's argument, even assuming its factual basis were correct and his logic were sound, would not negate the fact that firing an employee because the employee is unable to work constitutes a legitimate business reason, regardless of whether the employer needs to fill the position. Because Plaintiff's argument would not negate that legitimate reason for firing Plaintiff, Plaintiff would not have met his burden to disprove *all* of Plaintiff's proffered legitimate reasons.

More importantly, however, Plaintiff's deposition testimony reveals that even Plaintiff recognized why the separate rationale that Defendants needed to fill Plaintiff's position would constitute an additional legitimate reason for Defendants' termination of Plaintiff's employment. Specifically, Plaintiff recognized that even if there had been three open positions at the time he was fired, a fourth open position—caused by Plaintiff's inability to work—could have created a need to start filling the open positions:

Q (by Defendants' counsel): "Do you think being the fourth became an issue that perhaps at some point in time he needed to start filling these positions?"

Objection (by Plaintiff's counsel): "Object to the form. Answer if you know."

A (by Plaintiff): Yes.

Edwards Dep., at 131–32.

Plaintiff has failed to demonstrate the "causal connection" element of his *prima facie* case for a violation of Florida Statute § 440.205, and even if Plaintiff had met his burden of establishing a *prima facie* case, Defendants have proffered legitimate reasons for firing Plaintiff and Plaintiff has not submitted evidence from which a reasonable factfinder could conclude that those proffered reasons constituted pretext for firing Plaintiff in retaliation for filing a workers' compensation claim. Defendants therefore are entitled to summary judgment as to Count III.

### *RECOMMENDATION*

Based upon the foregoing, it is respectfully recommended that the Court GRANT Defendants' Motion for Summary Judgment (D.E.# 42).

The parties have until June 5, 2006, to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. *See* 28 U.S.C. § 636; Fed.R.Civ.P. 72. Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir.1988).